[Nos. 43097, 43098. En Banc. October 17, 1974.]

THE STATE OF WASHINGTON, *Petitioner*, v. DANNY WOO *et al.,*
*Respondents.*

[See Ann. 23 A.L.R.2d 1306, 1311; 29 Am. Jur. 2d, Evidence § 831.]

*Christopher T. Bayley, Prosecuting Attorney,* and *Frederick L. Yeatts, Assistant Chief Deputy,* for petitioner.

*Walsh & Brown,* by *Emmet T. Walsh,* and *Walthew, Warner, Keefe, Arron, Costello & Thompson,* by *Thomas P. Keefe,* for respondents.

STAFFORD, J.—The respondents (hereinafter defendants) were charged separately with multiple counts of bribing a public officer. At separate omnibus hearings, held pursuant to CrR 4.5, counsel for each defendant proposed stipulations for polygraph examination that generally provided for: (1) Court appointment of a "qualified" impartial polygraph operator; (2) a member of the prosecuting attorney's staff, the defendant's attorney, and a designated judge of the Superior Court to agree upon and draft questions to be propounded to the defendant by the polygraph operator; and (3) the recorded polygraph readings, and opinion of the polygraph operator based thereon, to be admissible in evidence at the discretion of the trial judge.

The State refused to stipulate, and the defendants brought the matter on by separate motions.

Despite the lack of stipulation, the defendants' motions were granted over the State's objection. In addition, the omnibus hearing judge ordered the State to pay half the

cost of each polygraph examination. The orders of the omnibus hearing judge are before us on separate writs of certiorari, consolidated for review. There being no adequate support in the record for the orders, we reverse.

 The general rule, followed almost without exception since *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), is that the results of a polygraph examination are inadmissible at trial. Courts in several jurisdictions have, however, found such results admissible upon *stipulation* by both the defense and the prosecution. *State v. Ross,* 7 Wn. App. 62, 497 P.2d 1343 (1972); *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962); *State v. Fields,* 434 S.W.2d 507 (Mo. 1968); *People v. Zazzetta,* 27 Ill. 2d 302, 189 N.E.2d 260 (1963); *State v. Stanislawski,* 62 Wis. 2d 730, 216 N.W.2d 8 (1974). Nevertheless, the latter cases are of little assistance, there being no stipulation in the instant case.

Defendants have asked us to decide whether polygraph tests administered pursuant to stipulation are admissible at trial. There being no stipulation, however, the issue is not before us and we decline the invitation.

Absent a stipulation the State opts for adherence to the general rule against admissibility. Defendants, on the other hand, urge us to review the current status of polygraphic evidence in light of new techniques and improvements in polygraph examinations. In support of their joint position, defendants cite three recent federal cases which have allowed the use of polygraphic evidence without stipulation. None are in point.

First, *United States v. Hart,* 344 F. Supp. 522 (E.D.N.Y. 1971), actually dealt with the government's duty, pursuant to *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), to disclose evidence which may tend to exculpate the defendant. In *Hart the principal witness for the prosecution* had submitted to a polygraph test at the government's request. The test indicated he was lying, which the government knew before putting him on the stand. The court ruled that the polygraph tests results were

admissible under the *Brady* principle and that the government had the burden of convincing the jury that the test was of no significance. On the other hand, *the results of tests administered to the defendants* were held to be inadmissible. Clearly, this does not support defendants' position.

Second, *United States v. Ridling,* 350 F. Supp. 90 (E.D. Mich. 1972) was a perjury case. The court viewed the expert testimony on polygraph results as opinion rather than scientific evidence. C. McCormick, *Law of Evidence* 505 (2d ed. E. Cleary 1972). After hearing evidence "from persons who are experts in the use of polygraphs to establish the value and reliability of the results of the tests," the court concluded that "the state of the science is such that the opinions of experts 'will assist the trier of fact to understand the evidence.' " *United States v. Ridling, supra* at 95.

Finally, in *United States v. Zeiger,* 350 F. Supp. 685, 690 (D.D.C. 1972) the District Court found that "[t]he testimony of the experts and the studies appearing in the exhibits lead [us] to believe that the polygraph is an effective instrument for detecting deception." After weighing the probative value of the evidence against policy considerations mitigating against admission, the court ruled in favor of admissibility, but the District Court was reversed in a short per curiam opinion by the Court of Appeals. *United States v. Zeiger,* 475 F.2d 1280 (D.C. Cir. 1972).

Turning again to the cases before us, the records of the omnibus hearings, unlike that in either *Ridling* or *Zeiger,* are devoid of any material to support the decisions of the judge. There is nothing to disclose whether there exists even minimum accepted qualifications for polygraph operators. If standards do exist, one is left to speculate as to what they are. There is nothing in the records, by way of testimony or exhibit, concerning the trustworthiness of the most modern polygraph equipment. The type of equipment proposed to be used in the instant cases and its reliability are not disclosed. Further, the records are silent as to tech-

niques to be used in the examinations and whether they are professionally acceptable.

If we are to consider a departure from a virtually unanimous rule against the admissibility of polygraph examinations, absent stipulation, we must be furnished with a record sufficiently adequate to permit review of the subject.

The orders of the omnibus hearing judge are reversed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.