31215. SCOTT v. THE STATE.
31216. LIGHT v. THE STATE.

Per curiam.

Scott and Light appeal their convictions for rape. At trial both were represented by the same attorney. Each was sentenced to 20 years, though half of Light's sentence was probated.

This criminal prosecution arose out of a midnight altercation at a motel in Gordon County, on August 23, 1974, involving a fight between two groups occupying adjacent rooms. One group was composed of prosecutrix, her husband, and three women friends, all of whom were

staying in the same room. The other group was Scott, Light, and Scott's woman friend. Scott and Light had been drinking, as had the prosecutrix. Prosecutrix, her husband, and two of the women in her group testified to appellants' having approached the open door of their (prosecutrix') room with invitations to come and have a drink. Upon being refused, appellants turned obscene and violent and attacked the others, Scott wielding a tire tool. Prosecutrix' group jumped out of windows, thinking she had fled also, but actually she had crawled into the bathroom and was left alone with appellants. She testified that Scott knocked her unconscious a couple of times, and raped her while Light was present. When she returned to consciousness and found them gone, she made her way to the front of the motel and reported that she had been raped. Police had already been summoned by the others. The medical evidence was that she suffered emotional and physical trauma, a bruise above the left eye, a bruise on her jaw, and an abrasion on her ankle. The doctor found no pelvic injuries, but there was crusted blood from an unknown source in the perineal area.

The prosecution also presented at trial a document signed by Scott acknowledging his desire that he be administered a lie detector test. It recited his rights, and the fact that the test was voluntary. The document had a second division at the bottom where he signed again after the test, reiterating his consent. After the document was admitted into evidence the state presented the testimony of the polygraph examiner. He testified, without objection, that he gave the examination pursuant to Scott's agreement that the results would be admitted into evidence regardless of what it showed; but that he advised Scott before testing that he could still cancel out of that agreement and refuse the test if he desired. Scott chose to be tested. The examiner's testimony explained the test and the chart made by Scott's responses. He gave his conclusion that the test results were unambiguous and that Scott's responses indicated he lied when he denied raping the prosecutrix. When the polygraph operator was asked whether defendant Light signed a lie detector consent form, defense counsel objected and the district attorney withdrew the question.

When the jury reached its verdicts, they were read by the district attorney and the following occurred: "District Attorney: We the jury find defendants guilty as charged the 24th day of September, 1974 and it is signed by the foreman, Your Honor. The Court: Did you have any word that you wanted to say to the court with respect to one defendant as you indicated when the court was in the jury room? The Foreman: No sir. The Court: Your are not doing that? The Foreman: We think the point has been taken. The Court: Sir? The Foreman: We think the point has been taken."

A majority of this court find that the judgment must be reversed and a new trial granted. Justices Jordan and Ingram find reversible error as to both defendants in the admission of the polygraph testimony even without objection. See *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776) (1966); *Famber v. State,* 134 Ga. App. 112 (213 SE2d 525) (1975). Justices Gunter and Hill find reversible error as against defendant Light in the admission of the testimony concerning Scott's failure of the polygraph examination.

Justices Gunter, Jordan, and Hill find reversible error in the state's failure to show absence of harm by the improper contact with the jurors. *Watkins v. State,* 237 Ga. 678 (1976); *Wilson v. State,* 212 Ga. 73 (90 SE2d 557) (1955).

The remaining enumerations of error are without merit.

*Judgment reversed. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Hall, J., who dissent.*

SUBMITTED JUNE 7, 1976 — DECIDED DECEMBER 1, 1976.

*Roland L. Enloe, Jr.,* for Scott.
*Robert L. Collins, Jr.,* for Light.
*David N. Vaughn, District Attorney, Charles Crawford, Assistant District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

HALL, Justice, dissenting.
This case is an anomaly in that a minority of Justices

on various enumerations of error combined to reverse the convictions and require a new trial. Fortunately the majority opinion is not a binding precedent, but it does apparently represent the views of the individual Justices on the principles stated in that opinion.

Two Justices vote to reverse the judgment against Scott because of the admission of his polygraph examination which came in not only without objection but upon a stipulation between the state and counsel for Scott and Light. Five Justices find no error.

Two Justices vote to reverse the judgment against Light because of the above admission which not only came in without objection but was never objected to by Light in any court, including this one, on any grounds other than those urged by Scott himself. Light has never sought to dissociate himself from Scott's polygraph test. These two Justices have simply made up that argument in his behalf. Five Justices find no error.

Three of the above four Justices vote to reverse the judgment of both defendants because of alleged malfeasance of the trial judge in his contact with the jury even though whatever is in the record was known during the trial and was not raised by any objection during the trial nor by a motion for new trial. The majority opinion even holds that the state failed to carry the burden of showing no harm by this contact in face of the fact that the state had no notice of any such contention because it had never been made by defendants at any point in the trial court when an evidentiary hearing could have been held to explore what actually happened. How on earth can the state carry any burden in the appellate court to show what was meant in a cold record by an ambiguous reference to an off-the-record proceeding?

Polygraph Evidence

Appellants argue that polygraph results are inadmissible in Georgia even with defendant's consent, and they rely primarily on *Famber v. State*, 134 Ga. App. 112, 113 (213 SE2d 525) (1975) ruling that such results were not admissible even if defendant agreed to their admission, and that such results had no probative value.

The question presented here cannot be answered by glibly citing opinions which on differing facts have said

generally that polygraph results are inadmissible no matter who offers them into evidence. Our question is a limited one: Where the record shows clearly that it was agreed between Scott, Scott's attorney and the state before the test, after the test, and during the trial, that such results should be admissible, and where the state offered the results into evidence and the defense made no objection, should the trial court on its own motion have refused to admit this agreed-upon evidence and should we now reverse these convictions because he failed to censor this evidence?

The general principle is that unless some rule of evidence prevents it, the parties shall be allowed to present to the court and jury whatever they desire, to attempt to prove their case. No rule of evidence prevents admission, *by agreement of both sides,* of polygraph results, as brief examination of Georgia authorities will show.

In *Salisbury v. State,* 221 Ga. 718 (146 SE2d 776) (1966) this court considered the question for the first time and concluded, after examining the approach of other jurisdictions, that the results of lie detector examinations were inadmissible. There, the *defendant* sought to introduce this evidence, the court excluded it, and this court agreed; but the opinion reflects no agreement by the state to the introduction of the polygraph evidence benefiting the defendant. Thus, the facts are not like those before us. Recently, in *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975) this court reiterated the proposition that polygraph results were not admissible; but there the defense made continuing objections to the state's offer of that evidence. In *Johnson v. Aetna Ins. Co.,* 124 Ga. App. 112 (183 SE2d 85) (1971), the examination results were never offered in evidence; and *Wallace v. Moss,* 121 Ga. App. 366 (174 SE2d 196) (1970) merely ruled without discussion that the court did not err in refusing to admit the results of a polygraph examination of a 16-year-old stepbrother of a child over whom a custody dispute was raging. That civil case is inapposite here.

The Court of Appeals correctly stated and applied the law in *Cagle v. State,* 132 Ga. App. 227 (207 SE2d 703) (1974). There, a conviction was reversed because

polygraph results were admitted against defendant *over his objection at trial,* where there was no agreement between the parties that this evidence be admitted. The court reiterated the general rule against admissibility, but limited its ruling carefully: "Neither an agreement to take a polygraph, nor the taking of one, constitutes a waiver of a right to object to the admission of its results into evidence, *absent an express stipulation of the parties as to its admissibility."* 132 Ga. App. at 229. (Emphasis supplied.) I read the italicized language to refer to an express agreement — not necessarily a written stipulation entered formally into the record. Thus, *Cagle* emphasizes that the parties may agree that this evidence shall be admissible. This makes of *Famber v. State,* supra, which purports to rely on *Cagle,* a misreading of it. *Famber* ruled that even if defendant agreed that the test results might be admitted, they were inadmissible and without probative value. Both *Famber's* conclusions were erroneous.

Here, despite the belated objections raised on appeal by Scott's new counsel, it is clear that all parties agreed before trial to the introduction of this evidence and at trial honored that agreement. Since nothing required the court to exclude such evidence, the test results and the testimony of the polygraph examiner were both properly admitted.

In recent years, numerous jurisdictions have recognized that the state of the art has so advanced that where polygraph examination is taken upon a stipulation that the results will be admissible in evidence, the results are admissible. Herman v. Eagle Star Ins. Co., 396 F2d 427 (9th Cir. 1968), affirming 283 FSupp. 33 (CD Cal. 1966); Commonwealth v. A Juvenile, 313 NE2d 120 (Sup. Jud. Ct. Mass. 1974); State v. Woo, 84 Wash. 2d 472 (527 P2d 271) (1974) (rule recognized); State v. Alderete, 86 N. M. 176 (521 P2d 138) (1974); State v. McDavitt, 62 N. J. 36 (297 A2d 849) (1972); State v. Williams, 108 Ariz. 382 (499 P2d 97) (1972); State v. Rowley, 15 Utah 2d 4 (386 P2d 126) (1963); People v. Houser, 85 Cal. App. 2d 686 (193 P2d 937) (1948); State v. Lowry, 163 Kan. 622 (185 P2d 147) (1947) (rule recognized). See Annot., Admissibility of Lie Detector Test Taken upon

Stipulation that the Result will be Admissible in Evidence, 53 ALR3d 1005 (1973).

Because no objection to this evidence was made at trial, and no question regarding it arose prior to the appeal phase, it is not necessary in this opinion to decide what qualifications the examiner and the test must have, and what formal requisites a stipulation must possess to overcome a challenge at trial and authorize the trial court to exercise its discretion in favor of admitting it. The rule is that polygraph results are not inherently inadmissible or without probative value; and here, where a stipulation was claimed and no objection was made, this evidence was properly admitted.

### Judge and Jury

Appellants assert that the trial judge held unauthorized and unreported colloquy with the jury. See quoted transcript in majority opinion. The defense counsel was present when the above statement was made. Defense counsel raised no questions concerning this point during the trial, no argument on this ground on a new trial motion, and no motion under Code Ann. § 6-805 (d) or (f) contending that the transcript should be supplemented as to this matter. The cases cited in the majority opinion are inapposite because in those cases objections were raised in the trial court.

The trial judge should have remained outside the jury room at all times. Had he done so, questions of this sort could not have arisen. I do not lightly toss aside a claim that the jury received from any source an unauthorized communication. See also *Berryhill v. State,* 235 Ga. 549, 554 (221 SE2d 185) (1976), and dissent thereto. Nonetheless, on this record I find that no reversible error has been shown. See generally, ABA Standards, The Function of the Trial Judge, § 5.2 (1968).

"A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict and complain later." *Favors v. State,* 234 Ga. 80, 88 (214 SE2d 645) (1975).