35568. ROSS v. THE STATE.

NICHOLS, Chief Justice.

Freddie D. Ross appeals his conviction for the murder of Johnny Jack Robinson. The state sought the death penalty but the jury returned a verdict of life imprisonment.

The jury heard evidence authorizing the following facts to be found: Freddie D. Ross and Ricky Duggar had been planning to rob Johnny Jack Robinson for about three weeks prior to the morning when Ross came to the Duggar residence and told Ricky Duggar that the time for the robbery had arrived. Ross told Ricky to get his mother's gun. Ricky got an unloaded .22 caliber pump rifle from his mother's bedroom closet, and he and Ross, joined by his brother Tommy Duggar, left the Duggar house and stood between the Robinson and Duggar houses awaiting the arrival of Robinson. Ricky told Tommy to walk down the road and watch for other cars. As Robinson pulled into the driveway, Ross and Ricky moved toward him. Ross asked Ricky for the rifle, loaded it with several cartridges, and shot Robinson three times. Ricky saw Robinson being hit by the bullets and saw him fall to the

ground.

Ross and Ricky then summoned Tommy. Ricky took Robinson's wallet from Robinson's pocket and handed it to Ross. While Ross and Tommy stood by Robinson, Ricky broke into the Robinson house and took Robinson's .410 shotgun and .22 rifle, which he gave to Ross. Ross handed the wallet back to Ricky, who took $20 for himself and $10 for Tommy and gave the wallet back to Ross still containing a substantial sum of money. The Duggars then took their mother's rifle back to her closet and went to bed.

When Ross was arrested at his home pursuant to a warrant, he was advised of his rights, signed a waiver, and agreed to tell the investigating officer about the case. The officer told Ross that Ricky and Tommy had given statements implicating Ross. Ross replied, "I might have killed Big Jack, but I don't remember it. If Ricky and Tommy said I did I must have." His statement was admitted in evidence after the trial court determined during a Jackson-Denno hearing that it had been given voluntarily.

Ross later denied planning or participating in the robbery or homicide. He denied making the statement to the investigating officer. He testified that he was at his house at the time of the offenses. His mother, brother and sister supported his alibi defense with their testimony. The Duggars pled guilty and testified in behalf of the state.

Medical testimony indicated that Robinson died from injuries caused by three bullets recovered from his body. Ballistics testimony indicated that these three bullets recovered from Robinson's body and the empty .22 caliber cartridge cases found at the scene had been fired in the caliber pump rifle that Mrs. Duggar voluntarily gave to the investigating officers.

The foregoing evidence when viewed in the light most favorable to support the verdict was sufficient to enable a rational trier of the facts to find Ross guilty beyond a reasonable doubt. Jackson v. Virginia, — U.S. — (99 SC 2781, 61 LE2d 560) (1979).

1. Ross first contends that the trial court erred in admitting in evidence the results of his polygraph examination. His former retained counsel raised no

objection to these test results being admitted in evidence because of a stipulation signed by Ross, his counsel and the district attorney that the "written report will be introduced into evidence, without objection by either side, at the time of the polygraphist's testimony at any trial or hearing involving this indictment." His current counsel contends that *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977), should be reconsidered and reversed, and that this court should declare that the polygraph evidence was inadmissible and without probative value. A majority of this court prefers to adhere to the *Chambers* decision. The polygraph operator testified that in his opinion the answers give by Ross concerning the homicide were deceptive. As in *Chambers,* the test evidence was not necessary to support the verdict. The first enumeration of error is without merit.

2. Ross next contends that the trial court should have charged, without request, concerning the meaning of the polygraph evidence. A majority of this court adheres to the ruling in *State v. Chambers,* 240 Ga. 76, 80, supra, that, "When polygraph results are admitted at trial, either party is entitled, *upon request,* to have the jury charged concerning the meaning of this evidence." (Emphasis supplied.) No request to charge on the meaning of the polygraph evidence was made and no exception to the charge as given was stated. Furthermore, the transcript establishes that the polygraph operator was conceded to be an expert and his opinions were conceded to be opinions of an expert. The trial court charged generally on expert testimony that, "The weight which is to be given the opinions of expert witnesses is for you to decide. You may accept it and act on it, or reject it, and then act on your own judgment as you may apply it to the evidence in this case." The jury was bound to have known that this charge applied to the testimony of the polygraph operator. There is no merit in this enumeration of error.

3. Tommy Duggar testified during direct examination that he had not been promised what his sentence would be if he would testify in the present case. He testified that he did hope he would get lenient or favorable treatment from the court after pleading guilty

and testifying. On cross examination, he reiterated that he did not know the penalty he was going to get. The following exhange then occurred: "Q. Do you know what the penalty is for this offense? A. Life in prison. Q. Who told you that? A. My lawyer? Q. Your lawyer? A. Yes. Q. O. K., did your lawyer tell you that you were going to get life?" At this point, the district attorney stated that the answer was privileged. Tommy Duggar's attorney then stated, "As a matter of principle, I think it would be wrong for me to fail to object to my client going into any discussion concerning this." The court sustained this statement as an objection. Counsel for Tommy Duggar later stated in his place that his best recollection of his conversation with his client was that he told Tommy Duggar that the offense of murder was punishable by life imprisonment or the death penalty; that no promise had been made to him regarding the punishment Duggar would receive; and that he had told Duggar that testifying against Ross could not hurt him so he should go tell the truth.

Ross contends that the foregoing facts invoke Giglio v. United States, 405 U.S. 150 (1972), but the evidence in this case from both Duggar and his attorney was that the prosecution had not offered Duggar leniency in return for his testimony. The answer sought, as to whether or not Duggar's attorney had told Duggar that the penalty for murder was life imprisonment, already had been given by Duggar during cross examination. Accordingly, the testimony sought merely would have been cumulative of Duggar's previous testimony and the error in excluding it, if any, is harmless. United States v. Dunbar, 590 F2d 1340 (5th Cir. 1979).

4. The trial court charged Code Ann. § 38-110. The transcript originally showed that the court charged the word "or" instead of the word "but" following the words "at which the evidence points may be false." The state moved pursuant to Code Ann. § 6-805 (f) to correct the transcript. A hearing was set on the motion during which the reporter's tape recording of the court's charge was played. Defense counsel urges in his brief in this court that he "was given an opportunity to listen to the tape recording of the Trial Court's charge, and it sounds as

though the Court used the word 'but', however, it is not as distinct and clear as other portions of the charge." After argument of counsel on the motion, the trial court ordered the transcript to be corrected to read "but" instead of "or." Defense counsel urges this court to listen to the tape and to correct the transcript according to our hearing and understanding of which of the two words was used by the trial court.

Subject only to the right of the trial court to require changes or corrections to be made, a certified transcript is presumed to be true, complete and correct. Code Ann. § 24-3105. "Where the correctness of the record is called into question the matter is to be resolved by the trial court." *Patterson v. State,* 233 Ga. 724, 731 (213 SE2d 612) (1975). This court will rely on the transcript as corrected by the trial court.

5. The trial court charged the substance of Code Ann. § 38-121 regarding corroboration of the testimony of an accomplice. Ross does not complain about the charge as given. His exception is that "the charge does not go far enough and instruct the jury that such corroborating evidence, when considered in connection with the other evidence in the case, should be sufficient to satisfy the jury of the guilt of the accused beyond a reasonable doubt." The charge as a whole is not subject to this criticism since the trial court charged more than adequately concerning the state's unshifting burden of proving each element of the crime beyond a reasonable doubt. Furthermore, the sufficiency of the evidence in this case to support the verdict does not depend upon the testimony of a sole accomplice. Both accomplices testified regarding the commission of the homicide by Ross. The testimony of one accomplice thus was corroborated by the testimony of the other accomplice. *Eubanks v. State,* 240 Ga. 544 (242 SE2d 41) (1978). Additionally this court has held that the exception stated in Code Ann. § 38-121 does not apply where the state does not rely solely on the testimony of a single accomplice. *Hall v. State,* 241 Ga. 252, 257 (7) (244 SE2d 833) (1978). This enumeration of error is lacking in merit.

*Judgment affirmed. All the Justices concur, except Jordan and Bowles, JJ., who concur in the judgment only.*

SUBMITTED NOVEMBER 2, 1979 — DECIDED
FEBRUARY 5, 1980.

*Alex Davis,* for appellant.
*William J. Smith, District Attorney, Arthur K.
Bolton, Attorney General, Mary Beth Westmoreland, Staff
Assistant Attorney General,* for appellee.