## 61288. STANDRIDGE v. THE STATE.

BIRDSONG, Judge.

Joseph (a/k/a James) Allen Standridge was convicted of burglary and sentenced to serve six years. He brings this appeal enumerating seven alleged errors. *Held:*

1. In his first enumeration of error, Standridge asserts the general grounds. The evidence shows that a burglar alarm was activated at an Atlanta florist. A police officer responding to the alarm found two windows broken and evidence that someone had been inside the building. The intruder apparently had attempted to force entry into two cabinets with an ax. The ax was found on the floor near the cabinets. During the investigation, the police officer left the building to move his patrol car from one location to another, removing it from the sight of a person on the opposite side of the building from which the car was parked. It was the theory of the state

that appellant originally "caught in the act" fled the building. Thereafter seeing the police vehicle apparently drive away, the burglar returned to the area from which he fled. After the officer was back inside the building, he suddenly observed a pair of gloved hands enter the window sill of a window slightly raised, as if a person had jumped up and grabbed the sill. The appellant's face then appeared in the space of a broken pane, apparently broken to unlatch and raise the window at an earlier time. Upon seeing the officer, appellant dropped to the ground and ran. The officer pursued appellant into some woods and apprehended him. Seeing that the appellant was not wearing gloves at the time of apprehension, the officer retraced his steps into the woods and found a single glove about ten feet from where appellant was apprehended. This wet glove had green stain on it and an examination disclosed green stain on the corresponding hand of appellant. Lastly, the officer had observed dried footprints appearing on the floor inside the building underneath the window, which prints had peculiar striations. The tennis shoes being worn by the appellant had similar striations. In defense, appellant offered evidence of an alibi in that he was at a friend's house when he heard and saw the police cars go to the florist. Out of curiosity he went to the building and peered in the window. He ran because of fear and a cry of "halt or I'll shoot."

The evidence of the primary issue was in conflict. The jury resolved that issue against the appellant. We find the evidence, viewed in the light most favorable to the verdict, supports the conclusion that any rational trier of fact could reasonably have found proof of guilt beyond any reasonable doubt. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528).

2. In his second enumeration of error, appellant contends that the trial court erred in denying a motion for a continuance thereby denying counsel adequate time to prepare a defense. The facts leading up to this motion show that appellant originally was defended by retained counsel. At the time of trial, appellant failed to appear. His counsel was granted permission to withdraw. At the next scheduled hearing date, appellant desired to represent himself pro se. He was granted that right. At the next scheduled hearing, appellant appeared complaining that he had consumed a large quantity of drugs and was in no condition to participate in legal proceedings. The trial court continued the case and had the appellant hospitalized for "drying out" and psychiatric examination. At the final scheduled trial date, appellant, on the day of trial, informed the court that he would not represent himself pro se but desired the services of appointed counsel. The public defender was appointed on the morning of trial and requested the continuance under discussion. In

effect, the right to adequate representation is a right afforded to the defendant and not a palliative afforded to counsel simply to allow counsel the highest and best opportunity to prepare a defense. In other words, by his own misconduct, a defendant may, by repeated continuances giving rise to a valid conclusion that delay is the actual motivation, ultimately forfeit the right to yet another delay solely for the purpose of allowing the final counsel the opportunity to make trial preparations. A defendant will not be permitted to use the change of counsel as a dilatory tactic in requesting a continuance. *Tootle v. State,* 135 Ga. App. 840 (5) (219 SE2d 492). Mere shortness of time for preparation by counsel does not ipso facto show a denial of the rights of an accused. Something more is required. *Carnes v. State,* 115 Ga. App. 387, 388 (154 SE2d 781). Stated otherwise, even if counsel shows error, that error must be shown to be harmful. *Dill v. State,* 222 Ga. 793 (1) (152 SE2d 741). Thus where there is no convoluted case or one without a large number of witnesses or intricate defenses, denial of a continuance merely because of shortness of time will not reflect an abuse of discretion. *Pope v. State,* 140 Ga. App. 643, 644 (231 SE2d 549). Such is the present case. See *Pulliam v. State,* 236 Ga. 460, 462 (224 SE2d 8). In this case, counsel for appellant was given time to interview the two witnesses for the state prior to their testimony. The transcript does not suggest nor does appellant's counsel show actual lack of preparation. The scope and thoroughness of examination and cross examination and the objections and argument made reflect no prejudice to appellant. We find no merit to this enumeration.

3. In Enumerations 3 and 4, appellant argues that it was error to allow a witness (a polygraph examiner) to testify because the witness was not disclosed as a witness until the day of trial and to testify in the absence of a written stipulation that the results of the polygraph would be admissible. The evidence shows in this regard that the trial court was aware of an earlier oral stipulation entered into by appellant (who initiated the request for a polygraph examination) that considering the results of the examination, if the appellant "came clean" the state would dismiss the indictment but if not, appellant agreed to allow the results of the examination to be admitted against him without objection. This oral agreement was between appellant's discharged retained counsel and the state. It was undisputed that appellant and his original counsel were informed that the polygraph operator would testify and that his name appeared on the first indictment. Because of the permutations in the case, ultimately a second indictment was issued. On this indictment the witness' name was not entered.

We are satisfied that the district attorney's oral offer in place

that there was a stipulation of admissibility (as corroborated by the notes of the trial judge) constitutes sufficient basis to warrant admission of the results of the polygraph as corroboration of the burglary charged. *State v. Chambers,* 240 Ga. 76, 79 (239 SE2d 324); *Scott v. State,* 146 Ga. App. 25, 26 (245 SE2d 360). To eliminate controversies such as appear in the present case, however, it is better practice to support the offer of such evidence with a written stipulation as to the admissibility of such evidence.

Moreover, we are also satisfied that the appellant was not harmed by the omission of the examiner's name from the second indictment until the day of trial. Appellant knew he had been examined by a polygraph examiner and had "flunked" the test. He had been told personally that the witness would be called to testify against him. The purpose of Code Ann. § 27-1403 is to insure that an accused is not confronted and surprised at trial with testimony against him by one whom he has not had an opportunity to interview before trial. *Hicks v. State,* 232 Ga. 393, 399 (207 SE2d 30). We find no evidence of surprise in this case and no harm to appellant. These two enumerations are without merit.

4. In Enumerations 5 and 6, appellant complains that the trial court erred in denying his motion for a continuance to have appellant examined by a psychiatrist to determine mental competency to stand trial and in allowing the same jury to consider both competency and the question of guilt or innocence. The transcript shows that the state put on all its evidence and rested. Only at this time did appointed counsel move for the continuance and enter a motion for a special trial on competency. The trial court refused the special plea because no evidence of incompetency had been shown other than the special plea itself. Thereafter appellant testified in his own behalf and presented very logical, coherent and expressive testimony which, if believed, would have warranted his acquittal. After both sides had rested, the court reconsidered the earlier motion and directed that the defendant be examined. On the next day, the trial court authorized a special proceeding on competency. The jury was told to disregard all evidence pertaining to guilt or innocence and consider only the question of competency. Special limited instructions were given and the jury returned a finding of competency. Only then was the jury told to consider the question of guilt or innocence, including an issue of mental responsibility (i. e., sanity at the time of offense).

We consider the better practice to bifurcate such proceedings with a separate jury deciding each question. However, in this case appellant did not make a special issue of competency to stand trial until after the state had rested its case on the merits. The defense made no showing that anything had occurred during the trial to fo-

cus defense counsel's attention on appellant's competency. Thus whatever competency question existed at that point in the trial also existed before the trial started. It seems clear that appellant did not attempt to comply with the apparent statutory scheme, i.e., to determine mental competency before trial so as to avoid the abortive efforts to show guilt of a person who is incompetent to assist in his own defense. In this case our examination of the record and transcript shows little or no likelihood that the traverse jury was or could have been confused or biased by first considering the question of competency and once that had been decided, proceeding to consider the question of guilt or innocence. The questions were entirely unrelated and carefully separated by the charge of the trial court. In Drope v. Missouri, 420 U. S. 162 (95 SC 896, 43 LE2d 103), the Supreme Court held that the trial judge must be constantly alert to changes in mental condition that suggests that an accused is unable to meet the standards of competency to stand trial and further held that where a doubt is raised, the correct course is to suspend the trial on the merits until such an evaluation can be made. Drope, supra, p. 181. In this case we conclude that the precautions enunciated in Drope were met. We have held that counsel did not show conditions or a change in conditions occurring during trial which would raise questions as to Standridge's mental competency. Yet out of an abundance of caution, the trial court sent appellant to a psychiatrist and had the psychiatrist testify before the jury on the question of competency. The trial on the merits was suspended until the question of competency was decided as a matter of fact. This is all Drope required. Under the facts of this case, we are satisfied that there was no error in allowing the same jury to decide the two separate questions (competency and guilt or innocence) where the question was not presented until after the state had rested its case. Under the carefully tailored charge of the trial court, the requirement of Code Ann. § 27-1502 that competency be decided by a "special jury" was met. There is no merit in these two enumerations.

5. In his last enumeration of error, appellant urges error in the argument of the district attorney. In her argument before the jury on the competency hearing, the assistant district attorney referred to testimony by the psychiatrist that based upon appellant's experience in the past and his lack of education, he had a distorted, incorrect understanding of the functions of the judge, jury and counsel. Appellant complains that the reference to "experience in the past" placed his character into evidence.

We disagree. Even if the statement had referred to appellant's past experience "in court," appellant would have no ground for complaint. The statement does not reflect upon appellant's

character. Because courts are attended by people of all classes, no derogatory inference as to one's character or reputation can be drawn from the fact that he has been seen on occasion in court. *Cherry v. State,* 220 Ga. 695, 696 (141 SE2d 412). At no time did the prosecutor make reference to a court or to misconduct or to any specific crime. Such oblique references to past experience does not impermissibly place a defendant's character into evidence. *Smith v. State,* 156 Ga. App. 250 (1) (274 SE2d 646). We discern no merit in this enumeration.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED APRIL 20, 1981 —
REHEARING DENIED MAY 6, 1981 

*Sharon A. Shade,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Carole E. Wall, Assistant District Attorneys,* for appellee.