JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Rhonda Turpin appeals from her convictions for forgery, uttering, tampering with records, and receiving stolen property. For the reasons set forth below, we affirm.
 {¶ 2} On November 14, 2002, defendant, Roddy Proffit, and Kathy Davie were indicted pursuant to a twelve count indictment. As is relevant to this appeal, all three defendants were charged with three counts of forgery, three counts of uttering, tampering with records, misuse of credit cards, and receiving stolen property. In addition, defendant Kathy Davie was charged with obstructing official business. Defendant pled not guilty to the charges, Proffit failed to appear for trial, and Davie plead guilty to obstructing official business. The matter then proceeded to trial on February 3, 2003.[1]
 {¶ 3} The state's evidence demonstrated that Elgar Products, a distributor of window and door products, issued a check in the amount of $56,400.15 to Kaku Hardware, one of its suppliers. Elgar's owner, Gary Brondfield, post-dated the check to August 13, 2002, then mailed the check to Kaku's Taiwan office. Brondfield subsequently realized that the check should have been mailed to Kaku's California office and that it would be returned to him due to insufficient postage. Brondfield then issued a second check to Kaku's California office.
 {¶ 4} The check inadvertently mailed to Taiwan was returned to Elgar Products shortly before the July 4, 2002 weekend. Brondfield left the check on the desk of Elgar's bookkeeper, Beverly King, who was to mark it as "void" and file it with the company's other cancelled checks. Roddy Proffit subsequently cleaned the offices at Elgar Products, and it was later learned that the check was missing.
 {¶ 5} Necia Burns, office manager of Fifth Third's Beachwood Mall branch, testified that defendant came to the bank on July 9, 2002, to deposit it into the account of Kathy Davie. Ms. Burns assumed that the defendant was Kathy Davie and, according to Burns, defendant did not object or otherwise correct her when she referred to her as such. Ms. Burns became suspicious because the payee section listing "Kaku Hardware Corp. or Kathy Davie" was typed in two different fonts. The check also contained the typewritten date "August 13, 2002" and the handwritten date "7/9/02" with the initials "D.B.," to ostensibly indicate that Brondfield[2] had made the change in the date of the check. Ms. Burns asked defendant why the check displayed two different dates and defendant stated that Elgar Products had initially planned to give her the check in August 2002, but she needed the money right away so the earlier date was added. Burns told defendant that, due to the date discrepancy on the check, it would be placed on hold, or extended hold. She contacted Elgar Products and learned that the check was missing from King's office and that it was originally written to the sole payee, Kaku Hardware Corp. Burns then contacted the financial crimes division of the bank. Anita Neiner of the financial crimes division produced photographs of defendant from the videotape surveillance system.
 {¶ 6} Later that month, Kathy Davie learned that checks and deposit slips were stolen from her checkbook and reported the loss to the bank. Davie was then questioned by Det. Russ Faranda of the Solon Police Department. Davie denied knowing the woman depicted on the surveillance photographs, and denied knowing anything about the matter. As noted previously, Davie pled guilty to obstructing official business, and at trial, however, she admitted that she works at defendant's restaurant and lives in an apartment owned by defendant. Davie testified that she lied to Det. Faranda because she felt that she had been treated unfairly for simply reporting the theft of her checks and deposit slips to the bank, and because she objected to being handcuffed by Faranda. Davie admitted that she had now "accepted responsibility for [her] involvement in this matter." (Tr. 95-96).
 {¶ 7} Det. Faranda testified that he questioned defendant in connection with this matter and she admitted that she had gotten the check from Roddy Proffit, who cleans some of the buildings she owns. She further claimed that she had deposited the check as a favor for Davie and that she knew Davie was expecting insurance proceeds from her mother's estate. Det. Faranda further indicated that even though Turpin was not a co-owner of the account, she could nonetheless obtain funds deposited into it through fraudulent means such as presenting false identification or obtaining Davie's ATM card or identification.
 {¶ 8} The state also presented the testimony of Elmore James, Jr., owner of J A Cleaning, who testified that Proffit admitted to him that he had stolen the check from Elgar Products.
 {¶ 9} Defendant elected not to present evidence and the case was submitted to the jury. She was subsequently convicted of forgery, uttering, and receiving stolen property but was found not guilty of tampering with records charge. The trial court sentenced defendant to three ten-month terms of incarceration, to be served concurrently, and further ordered her to pay a fine of $1,000 and repay the county for using a court appointed attorney.[3] Defendant now appeals and assigns six errors for our review.
 {¶ 10} Defendant's first assignments of error states:
 {¶ 11} "The Court erred, and the appellant was denied due process, when the forgery, uttering and receiving stolen property charges were resolved against her on the basis of defective jury instructions."
 {¶ 12} Within this assignment of error, defendant complains that because Det. Faranda testified that he believed that there had been collusion between defendant, Davie, and Proffit, the trial court erred in failing to instruct the jury as to accomplice credibility, pursuant to R.C. 2923.03(D).
 {¶ 13} Because no such instruction was requested in this matter, we review defendant's contention for plain error, to prevent a manifest miscarriage of justice. State v. Franklin (1991), 62 Ohio St.3d 118,128; State v. Landrum (1990), 53 Ohio St.3d 107, 111; State v. Long
(1978), 53 Ohio St.2d 91 at paragraph three of the syllabus. Accordingly, we must consider whether, but for the error, the outcome of the trial would clearly have been otherwise. State v. Jackson (1991),57 Ohio St.3d 29, 41.
 {¶ 14} R.C. 2923.03(D) provides for the following jury instruction on accomplice testimony:
 {¶ 15} "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion and require that it be viewed with grave caution. * * * *"
 {¶ 16} Such an instruction is proper where there is some evidence of complicity, State v. Moritz (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268,i.e., evidence that one aided or abetted another in committing the offense while acting with the kind of culpability required for commission of the offense. State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792;State v. Johnson (2001), 93 Ohio St.3d 240, 754 N.E.2d 796.
 {¶ 17} In this instance, the state's theory was that Davie had simply obstructed official business by lying to Det. Faranda. Its evidence as to Davie was that she lied about not knowing Turpin, that the lie was motivated by her belief that she had been treated unfairly, and that her checks were stolen. The state did not present evidence that Davie and defendant aided or abetted one another in committing the offense while acting with the kind of culpability required for commission of the offense. Similarly, defendant posited that no criminal wrongdoing had occurred, that she had simply brought the check to the bank because she knew that Davie had been expecting insurance proceeds from her mother's estate, and there was no indication from the defense that Davie had any advance knowledge of or participation in defendant's actions with regard to the check. In short, there was no evidence that either Davie or defendant gave assistance or encouragement to the other in connection with the commission of the offenses.
 {¶ 18} In accordance with the foregoing, we cannot conclude that the trial court committed plain error in failing to provide the instruction set forth in R.C. 2923.03(D). The first assignment of error is overruled.
 {¶ 19} Defendant's second assignment of error states:
 {¶ 20} "Where the state relies solely on the testimony of an accomplice for the conviction, the absence of proof that corroborates the accomplice's testimony renders the verdicts null and void."
 {¶ 21} Within this assignment of error, defendant maintains that her convictions cannot stand because they are improperly premised upon the uncorroborated "accomplice" testimony of Davie.
 {¶ 22} The statutory demand for corroboration of accomplice testimony in complicity cases was repealed and replaced with language mandating a cautionary jury instruction explaining that the "complicity of a witness may affect his credibility and make his testimony subject to grave suspicion." R.C. 2923.03(D). See State v. Economo (1996),76 Ohio St.3d 56; 1996 Ohio 426; 666 N.E.2d 225. Moreover, the Supreme Court has noted that the need for some corroboration of an accomplice's testimony does not require that the testimony of the accomplice is "corroborated as to every essential element of the crime, or that it establish the defendant's guilt, but only that the corroborating evidence tend to establish his guilt and be of `such a character and quality as tends to prove the guilt of the accused by connecting him with the crime.'" State v. Butler, 2003 Ohio 3468, Ohio 7th App. No. 01 JE 34; State v. Stedman, 2002 Ohio 4276, Ohio 8th App. No. 77334; State v.Economo, supra, citing Chambers v. State (1977), 141 Ga. App. 438, 439 (233 S.E.2d 818), rev'd on other grounds, 240 Ga. 76 (239 S.E.2d 324).
 {¶ 23} In this instance, as noted previously, neither the state nor defendant portrayed Davie and defendant as accomplices. In any event, the state's case demonstrated that defendant explained to Burns that the check had two different dates because she needed money and Elgar Products (as initialed by "D.B.") listed the earlier date on the check. In addition, the state presented evidence that Burns called defendant by Davie's name and defendant did not correct her. Accordingly, even assuming that Davie were an accomplice, and even assuming a continuing need for corroboration, we hold that the state presented sufficient additional evidence to connect defendant to the offenses at issue.
 {¶ 24} This assignment of error is without merit.
 {¶ 25} Defendant's third assignment of error states:
 {¶ 26} "Appellant was denied effective assistance when counsel failed to move for the suppression of appellant's involuntary and inculpatory statements or to object to their admission at trial."
 {¶ 27} In order to demonstrate ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. See Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v.Noling (2002), 98 Ohio St.3d 44, 65, 2002 Ohio 7044, 781 N.E.2d 88; Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; see, also, Bradley,
paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation). To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph two of the syllabus; see, also, Strickland,466 U.S. at 687. Moreover, when a reviewing court considers an ineffective assistance of counsel claim, it should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips
(1995), 74 Ohio St.3d 72, 85, 1995 Ohio 171, 656 N.E.2d 643 (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland, 466 U.S. at 689. As the Strickland
Court stated, a reviewing court:
 {¶ 28} "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. 466 U.S. at 689; see, also, State v. Hamblin (1988),37 Ohio St.3d 153, 524 N.E.2d 476, cert. den. (1988), 488 U.S. 975,109 S.Ct. 515, 102 L.Ed.2d 550.
 {¶ 29} The admission of alleged involuntary and inculpatory statements is governed by the United States Supreme Court's pronouncements in Miranda v. Arizona (1966), 384 U.S. 436, 444,16 L.Ed.2d 694, 86 S.Ct. 1602. In Miranda, the Court held that when an individual is taken into custody and questioned, procedural safeguards are necessary to protect the constitutional privilege against self-incrimination. When there is no custodial interrogation, the warnings are irrelevant to the admissibility of any statements. Miranda, supra, 384 U.S. at 478,86 S.Ct. at 1630. See, also, State v. Tucker (1998), 81 Ohio St.3d 431,436, 692 N.E.2d 171, 175.
 {¶ 30} In determining whether a person is in custody for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a "formal arrest or a restraint on freedom of movement" of the degree associated with a formal arrest. California v. Beheler (1983),463 U.S. 1121, 1125, 77 L.Ed.2d 1275, 103 S.Ct. 3517.
 {¶ 31} Based upon our review of the record, defendant came to the police station for an interview at Faranda's request. (Tr. 123). There is no indication that she was in custody, had been arrested or was otherwise restrained. Thus, there is no basis, as can be discerned herein for concluding that the police violated defendant's Miranda protections in this matter, and no basis for concluding that her attorney erred in failing to seek suppression of her remarks. In the absence of evidence that defendant's trial counsel committed an error, the claim of ineffective assistance of counsel must fail. This assignment of error is without merit.
 {¶ 32} Defendant's fourth assignment of error states:
 {¶ 33} "A conviction must be reversed when the separate and distinct legal theories of guilt are submitted to the jury (especially when one is legally insufficient) and it is impossible to determine which ground the jury selected."
 {¶ 34} Within this assignment of error, defendant again complains that the court failed to give the cautionary instruction for evaluating accomplice testimony, but provided an instruction as to aiding and abetting.
 {¶ 35} As we noted previously, there was no objection to the instruction. In addition, neither the state nor defendant portrayed Davie and defendant as accomplices. Det. Faranda testified that Davie completed a handwriting exemplar to "eliminate her as a suspect." (Tr. 131). Although the court did instruct the jury as to aiding and abetting, we note that Proffit was also indicted in this matter, and that defendant was also charged with tampering with records and receiving stolen property. We therefore cannot conclude that the trial court committed plain error in connection with its charge.
 {¶ 36} The fourth assignment of error is without merit.
 {¶ 37} Defendant's fifth assignment of error states:
 {¶ 38} "The verdicts finding appellant guilty of forgery, uttering, and receiving stolen property were not supported by evidence sufficient to justify a finding of guilt beyond a reasonable doubt."
 {¶ 39} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, syllabus paragraph two, following Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. SeeThompkins, at 387.
 {¶ 40} In this instance, the evidence demonstrated that defendant obtained the check from Proffit, brought it to the bank for deposit with an additional payee, added in a different typewritten font, and explained that the date had been changed because she needed the money sooner than Elgar Products had originally planned to pay her. The state also presented evidence that Davie, who worked for defendant, noticed that various items were taken from her checkbook, and that defendant justified her actions as a favor to Davie because she knew that Davie was expecting insurance proceeds from her mother's estate. In our view, a rational trier of fact could have found the essential elements of forgery, uttering, and tampering with records were proven beyond a reasonable doubt. This assignment of error is without merit.
 {¶ 41} Defendant's sixth assignment of error states:
 {¶ 42} "The verdicts are against the manifest weight of the evidence and are contrary to law."
 {¶ 43} A manifest-weight-of-the-evidence argument involves determining whether there exists a greater amount of credible evidence to support one side of an issue rather than the other. State v. Thompkins,78 Ohio St.3d at 387. It is not a question of mathematics, but depends on its effect in inducing belief. Id. A reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost his or her way and created such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 44} We see no miscarriage of justice in this matter. The state presented irrefutable evidence that defendant arrived at the bank with a corporate check that contained an additional payee which had been added with a new font, and also contained a typewritten and a handwritten date, and that defendant explained that she needed the money more promptly than Elgar Products had initially planned on paying her. She also failed to correct Burns when she called her by Davie's name. Moreover, the version of events proffered by the defense did not logically explain what had occurred and was unreasonable since the check was from a corporation with a Taiwan address and there was no evidence that Davie ever knew, requested, or entrusted the large sum to defendant's care. The convictions are not against the manifest weight of the evidence.
 {¶ 45} The sixth assignment of error is without merit.
Affirmed.
KENNETH A. ROCCO, A.J., AND SEAN C. GALLAGHER, J., CONCUR.
[1] The charge of misuse of a credit card, and two of the forgery and uttering charges were dismissed prior to trial.
[2] Gary Brondfield acknowledged at trial that the "G" of his signature resembles a "D."
[3] Following the trial, defendant admitted that she was not indigent and that it was improper for her to have used the services of the County Public Defender. (Tr. 212-213).