

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 JUL 21 AM 11: 24

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70429-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAHAD V.D. HILL, | ) | UNPUBLISHED OPINION |
| B.D. 04/18/95, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 21, 2014 |
| | ) | |

VERELLEN, A.C.J. — Based on expert testimony that fingerprints at the scene of a burglary were Jahad Hill's, the juvenile court found him guilty of residential burglary. Hill appeals, arguing that the reliability of latent fingerprint identification is suspect and that this court should reconsider its holding in State v. Lucca that such identifications can be sufficient, standing alone, to support a criminal conviction.[1] Because this argument was not adequately preserved below and because the record is insufficient to warrant a departure from Lucca in any event, we affirm.

## FACTS

On September 14, 2012, someone burglarized the home of Chester and Therese Pasternak in Des Moines, Washington. The burglar took jewelry and other personal property.

---

[1] 56 Wn. App. 597, 784 P.2d 572 (1990).

Officer Langhofer of the Des Moines Police Department investigated the burglary. Most of the window screens on the backside of the house had been removed and a window was open. Officer Langhofer found a hand impression on the open window. When he had difficulty lifting fingerprints from the window, he contacted a detective and the automated fingerprint identification system (AFIS) lab. The detective suggested Officer Langhofer take a photograph of the prints, and the AFIS technician suggested that he use more fingerprint powder. Officer Langhofer eventually recovered two latent prints: one on the inside and another on the outside of the window.

Bolney Wade Anderson, a King County latent print examiner, did a computer search of known prints with one of the latent prints from the Pasternak's home. The search disclosed a match between the latent print and Hill's prints.

Anderson then obtained Hill's known prints and performed his own comparison. He enlarged the known and latent prints and then compared the two by looking at ridges in the prints. He determined that the window prints matched Hill's left middle and little fingers. His comparison procedure and results were reviewed and verified by a verifier and a quality control person.

Based on the fingerprint evidence, the State charged Hill with residential burglary. At trial, Officer Langhofer and Bolney Anderson testified to the facts set forth above. On cross-examination, Anderson testified that no verifier had ever disagreed with his conclusions. He admitted, however, that other examiners in his office had made at least two misidentifications that were discovered by a verifier. He also conceded that there is no minimum number of details required before he can

declare a match between prints. Defense counsel did not ask the expert about the reliability of latent fingerprint analysis or call an expert for the defense. The defense rested without calling witnesses.

During closing argument, the prosecutor argued that under this court's decision in Lucca, the fingerprint evidence was sufficient, by itself, to support a conviction. Hill countered that the reliability of fingerprint evidence had been called into question since Lucca. He argued that a 2009 report from the National Academy of Sciences (NAS report) "critiqued fingerprint evidence as not being scientifically-based, [but] simply being a matter of matching pictures as preschoolers do in their assignments."[2] The following colloquy ensued:

> COURT: Mr. McGuire, I don't have any evidence of the National Academy of Sciences study. Can I consider it?
>
> MCGUIRE: I think the court can take judicial notice of it, yes. I don't think it's evidence, no, but I think it certainly is part of the prism through which the court can as an educated, modern jurist consider the framework with which to consider evidence.
>
> I don't think it's at all out of line for the court to educate oneself in terms of evidence. That isn't to say that I'm asking you to believe a certain finding from any study. I'm not suggesting that. I'm simply saying that the National Academy of Sciences has raised a number of critical questions about fingerprint evidence and about the quality of that evidence for court purposes, and I think it certainly is fair to consider where that is the only evidence that identifies Jahad Hill as being involved in any way with this crime. I think it is important that the court consider all viewpoint[s] that would permit an overall objective viewing of the evidence that has been proffered.

---

[2] Report of Proceedings (Apr. 2, 2013) at 136 (referring to National Research Council *Strengthening Forensic Science in the United States: A Path Forward* (Nat'l Academy of Sciences 2009), *available at* https://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf.

> Whether one fingerprint as in <u>Lucca</u> would be sufficient today, I think is another question. Hopefully, we don't have to address that question in this case, but whether fingerprint evidence alone is sufficient in today's world with the evolution of science is a much larger question.
>
> . . . .
>
> STATE:  . . . Mr. McGuire's request of Your Honor, the trier of fact, to do your own independent research on something that has not been testified to or admitted into evidence regarding some study that I'm not quite even sure what the result of that study was is absolutely inappropriate. . . .
>
> Now, the prints on the inside portion of this window track that is up in State Exhibit No. 10, Mr. Anderson noted that [Hill's] prints, he found that his middle left finger and also his left little finger were a match. On each of those fingers, he said that there were multiple bifurcations that were the same, multiple end points that were the same. This is—fingerprint analysis, your Honor, is a science. Mr. Anderson is an expert. He said that no two people have the same fingerprints. He pointed out that even identical twins don't have the same fingerprints. Mr. Hill's fingerprints, no one else's, were found on this window here.[3]

In its oral ruling, the court noted that the only disputed questions were whether the prints were Hill's and what weight the court should give them. The court found that the prints were Hill's and that, under <u>Lucca</u>, that fact was alone sufficient to prove Hill's guilt beyond a reasonable doubt. Hill appeals.

## DECISION

The sole issue on appeal is whether the fingerprint evidence was sufficient, by itself, to support Hill's adjudication of guilt. Hill acknowledges our prior holding that "[f]ingerprint evidence alone is sufficient to support a conviction where the trier of fact

---

[3] <u>Id.</u> at 137-40.

could reasonably infer from the circumstances that it could only have been impressed at the time the crime was committed."[4] He argues, however, that the NAS report and various documented incidents of erroneous fingerprint identification "prove that findings of guilt resting only on latent fingerprint analysis pose an unacceptable risk of erroneous identification."[5] Noting that Washington courts have not allowed convictions to rest solely on dog tracking evidence or confessions due to their fallibility,[6] Hill asks us to make the same categorical determination regarding latent fingerprint evidence.[7] We decline to do so for several reasons.

First, Hill did not adequately preserve or support this argument below. He did not argue, as he does on appeal, for a categorical change to the status of latent fingerprint evidence. He simply argued that the NAS report had "raised a number of critical questions about fingerprint evidence," and that the trial court could consider the NAS report in weighing the evidence. He also did not offer the NAS report into evidence. Nor did he offer any evidence of false positive rates associated with latent fingerprint identification.[8] Because there may be fact questions regarding the degree

---

[4] Lucca, 56 Wn. App. at 599.

[5] Appellant's Br. at 19.

[6] See State v. Loucks, 98 Wn.2d 563, 656 P.2d 480 (1983) (dog tracking evidence); State v. Dow, 168 Wn.2d 243, 227 P.3d 1278 (2010) (confessions).

[7] Fingerprints can be patent or latent. United States v. Herrera, 704 F.3d 480, 482-87 (C.A.7 2013) ("Patent fingerprints are made by pressing a fingertip covered with ink on a white card or similar white surface, and are visible. Latent fingerprints are prints, usually invisible, left on a smooth surface when a person touches it with a finger or fingers. Laboratory techniques are employed to make a latent fingerprint visible so that it can be compared with other fingerprints.").

[8] In a decision filed earlier this year, the Massachusetts Supreme Court stated that "preliminary statistical evidence has begun to emerge" showing a small false positive error rate for fingerprint analysis. However, the court suggested that changes to the status of such evidence not be made until research on error rates and populations frequencies "reach

of the alleged unreliability of latent fingerprint evidence, it was incumbent on Hill to present evidence of unreliability to the trial court. Hill's failure to preserve or create a record supporting the argument he makes on appeal precludes review.[9]

Second, even if we were to address the argument for the first time on appeal, the record is insufficient to even consider a categorical change to the status of latent fingerprint evidence. As previously noted, the record contains no evidence of error rates in latent fingerprint analysis. Nor does Hill cite a single case from any jurisdiction holding that latent fingerprint evidence is insufficient, standing alone, to support a conviction. And while the NAS report does raise questions regarding the reliability of latent fingerprint evidence, courts have found it insufficient to warrant changes to the status of such evidence.[10] A statement in the report itself cautions against giving it too much weight:

---

a point that permits more reliable conclusions." Commonwealth v. Joyner, 467 Mass. 176, 4 N.E.3d 282, 289-92 nn.7, 11 & 12 (2014).

[9] Cf. State v. Woo, 84 Wn.2d 472, 475, 527 P.2d 271 (1974) (noting that "[t]here is nothing in the records, by way of testimony or exhibit, concerning the trustworthiness of the most modern polygraph equipment. The type of equipment proposed to be used in the instant cases and its reliability are not disclosed. . . . If we are to consider a departure from a virtually unanimous rule against the admissibility of polygraph examinations . . . we must be furnished with a record sufficiently adequate to permit review of the subject."); State v. Pleasant, 21 Wn. App. 177, 184, 583 P.2d 680 (1978) (accord).

[10] See Johnston v. State, 27 So.3d 11, 21 (Fla. 2010) (NAS report "lacks the specificity that would justify a conclusion that it provides a basis to find the forensic evidence admitted at trial to be infirm or faulty"); United States v. Rose, 672 F. Supp. 2d 723, 726 (D.Md. 2009) (despite NAS report, "fingerprint identification evidence . . . is generally accepted in the relevant scientific community, has a very low incidence of erroneous misidentifications, and is sufficiently reliable to be admissible under Fed. R. Ev. 702"); Commonwealth v. Gambora, 457 Mass. 715, 933 N.E.2d 50, 55-61 & n.22 (2010) ("nothing in this opinion should be read to suggest that the existence of the NAS [r]eport alone will require the conduct of . . . hearings as to the general reliability of expert opinions concerning fingerprint identifications").

The committee decided early in its work that it would not be feasible to develop a detailed evaluation of each discipline in terms of its scientific underpinning, level of development, and ability to provide evidence to address the major types of questions raised in criminal prosecutions and civil litigation.[11]

In addition, the report "does not appear to question the underlying theory which grounds fingerprint identification evidence; as the report states, there is scientific evidence supporting the theory that fingerprints are unique to each person and do not change over a person's life."[12] In short, the record is inadequate to contemplate the categorical change Hill requests.

Finally, it is important to remember that Washington cases prohibiting convictions based solely on dog tracking evidence and confessions are different in one very significant respect, i.e., both were based on a historical distrust of such evidence.[13] That is not the case with latent fingerprint evidence. On the contrary, "the reliability of fingerprint identification has been tested in our adversarial system for over a century" and has long been accepted by both the scientific community and Washington courts.[14] Accordingly, given the long-standing acceptance of such evidence, any change to its status must be based on a solid scientific foundation that is not presented here.[15]

---

[11] NAS report at 7.

[12] Gambora, 933 N.E.2d at 58.

[13] See Loucks, 98 Wn.2d at 566-67; Dow, 168 Wn.2d at 249.

[14] State v. Pigott, ___ Wn. App. ___, 325 P.3d 247, 250 (2014).

[15] We note that even critics of fingerprint evidence still find it more probative than eyewitness identification of a stranger, which Washington courts consider alone sufficient to support a conviction. Joyner, 4 N.E.3d at 291-92; State v. Delker, 35 Wn. App. 346, 351, 666 P.2d 896 (1983) (eyewitness testimony alone sufficient to establish identity).

For these reasons, we adhere to our decision in <u>Lucca</u>. The juvenile court's adjudication of guilt is supported by sufficient evidence.

Affirmed.

WE CONCUR: