[No. 20403–3–I.   Division One.   February 1, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. ADAM
AHLFINGER, *Appellant.*

*John W. Wolfe, James E. Lobsenz, Paris Kallas,* and *Wolfe, Lobsenz & Cullen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanne Tweten, Deputy,* for respondent.

PEKELIS, J.—Adam Ahlfinger appeals his conviction in juvenile court for first degree statutory rape. He contends that the trial court erred by refusing to admit the results of two unstipulated polygraph examinations in violation of his constitutional rights. He also contends that the trial court erred by refusing to permit defense counsel to examine a social worker's written notes which he used to refresh his memory. We affirm.

## FACTS

Adam Ahlfinger was charged by information with the crime of statutory rape in the first degree allegedly committed while he was baby–sitting the 4–year–old victim, E.N. The information was filed in the Juvenile Department of the King County Superior Court.

Before trial, defense counsel moved to admit the results of two polygraph examinations. The first test had been given to Ahlfinger by the King County Police Department. Ahlfinger's then–attorney had stipulated that the results of the polygraph examination would *not* be admissible. The test results had been favorable to Ahlfinger. A second polygraph examination had been solicited by Ahlfinger's new attorney and performed by Dr. David Raskin, a professor of psychology specializing in polygraph examinations. Again the results had been favorable to Ahlfinger. However, the State and the defense had not stipulated that the results of this second test would be admissible. The trial court denied Ahlfinger's motion to admit the results, but permitted defense counsel to make an offer of proof on the reliability

of polygraph examinations, the qualifications of Dr. Raskin, and the techniques employed in examining Ahlfinger.

The trial court then conducted a fact–finding hearing at which Orlando Manois, a social worker and clinical supervisor at Harborview Sexual Assault Center, testified. During the hearing, defense counsel moved for the production of Manois' notes made shortly after he interviewed the victim. Defense counsel argued that since Manois had used the notes to refresh his memory, ER 612 entitled the defense to review those notes. After examining the notes in camera, the trial court denied the motion.

Manois then testified that the victim told him that while Ahlfinger baby–sat her, he masturbated in front of her, put his penis in her mouth, touched his penis to her bottom, and put a foreign object in her vagina. The victim, who was 5 at the time of trial, testified that Ahlfinger committed these acts while he baby–sat her. When Ahlfinger testified, he admitted that he had masturbated on the victim's bed while he was baby–sitting her, but not intentionally in her presence. He denied that he had any sexual contact with the victim.

Based on this and other testimony, the trial court found Ahlfinger guilty of first degree statutory rape.

I

UNSTIPULATED POLYGRAPH RESULTS

Ahlfinger contends that the trial court committed constitutional error by failing to admit the results of what he characterizes as "unstipulated polygraph examinations." Specifically, he contends that the court's failure to admit the results violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process.

In Washington, polygraph evidence is inadmissible absent a written stipulation by both parties. *State v. Woo,* 84 Wn.2d 472, 473, 527 P.2d 271 (1974); *accord, State v. Renfro,* 96 Wn.2d 902, 905, 639 P.2d 737, *cert. denied,* 459 U.S. 842 (1982). Washington courts have limited the admissibility of polygraph evidence because the polygraph

has not attained general acceptance by the scientific community. *State v. Bartholomew*, 98 Wn.2d 173, 203, 654 P.2d 1170 (1982), *State's cert. granted, judgment vacated in part on other grounds*, 463 U.S. 1203, 77 L. Ed. 2d 1383, 103 S. Ct. 3530, *defendant's cert. denied*, 463 U.S. 1212, 77 L. Ed. 2d 1395, 103 S. Ct. 3548 (1983); *State v. Descoteaux*, 94 Wn.2d 31, 38, 614 P.2d 179 (1980), *overruled on other grounds in State v. Danforth*, 97 Wn.2d 255, 257 n.1, 643 P.2d 882 (1982).

█ Nevertheless, Ahlfinger urges this court to depart from this general rule against admissibility because, he claims, his offer of proof establishes the reliability and trustworthiness of these polygraphs.[1] In determining whether scientific evidence is admissible, Washington courts apply the *Frye* standard[2] which requires that the underlying principles of an expert's opinion be generally accepted by the scientific community before the evidence is admitted. *Woo*, 84 Wn.2d at 473; *accord, State v. Canaday*, 90 Wn.2d 808, 813, 585 P.2d 1185 (1978). The Washington Supreme Court has suggested that it might reconsider whether unstipulated polygraph evidence is admissible if the proffering party is able to demonstrate that the polygraph evidence meets the *Frye* standard. *State v. Grisby*, 97 Wn.2d 493, 502, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington*, 459 U.S. 1211 (1983); *State v. Young*, 87 Wn.2d 129, 131–32, 550 P.2d 1 (1976); *Woo*, 84 Wn.2d at 474–75.

Ahlfinger's offer of proof fails to establish that the polygraph is generally accepted by the scientific community. Whether a scientific method or technique is generally accepted requires more than the bare assertion by one expert witness that the technique is reliable. Despite Dr.

---

[1] We note that the evidence presented by Ahlfinger went only to the second polygraph examination. There was no evidence as to the techniques used in the first examination, nor as to the qualifications of the examiner. Thus, we consider only the second test.

[2] *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923).

Raskin's opinion that the polygraph can be highly accurate, to date, psychologists[3] generally do not recognize the polygraph as a reliable method for detecting the truth. Significantly, the American Psychological Association has yet to endorse the polygraph:

> Despite many years of development of the polygraph, the scientific evidence is still unsatisfactory for the validity of psychophysiological indicators to infer deceptive behavior. . . .

D. Raskin, *The Polygraph in 1986: Scientific, Professional and Legal Issues Surrounding Application and Acceptance of Polygraph Evidence,* 1986 Utah L. Rev. 29, 73 n.142 (quoting a press release from the American Psychological Association dated February 1, 1986). Moreover, even psychologists specializing in polygraph research admit that the technique is not uniformly reliable in detecting deception or measuring truthfulness. For example, in his recent law review article, Dr. Raskin himself admits that "more field research is needed to provide better estimates of [the] validity [of polygraph techniques employed] in actual practice." Raskin, at 72. Other commentators view the polygraph less favorably: "scientific studies of the validity of the polygraph method now used in . . . police operations suggest that it is a highly unreliable and invalid procedure". Alpher & Blanton, *The Accuracy of Lie Detection: Why Lie Tests Based on the Polygraph Should Not Be Admitted Into Evidence Today,* 9 Law & Psychology Rev. 67, 75 (1985). Thus, because Ahlfinger has failed to establish acceptance of the polygraph by the scientific community, we decline to reconsider Washington's established rule against admitting evidence of unstipulated polygraphs.

Notwithstanding Washington's clear rule against admitting unstipulated polygraph evidence, Ahlfinger contends that federal constitutional law mandates admission of his

---

[3]Because the polygraph measures psychophysiological responses, its scientific validity is assessed by psychologists.

polygraph results. Ahlfinger argues that a State's evidentiary rule may not be applied mechanistically to defeat the defendant's right to present reliable exculpatory evidence. Ahlfinger relies on a series of United States Supreme Court cases to support his argument, the most recent being *Rock v. Arkansas,* ___ U.S. ___, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987).

In *Rock,* the defendant was charged with first degree manslaughter in the shooting death of her husband. In order to refresh her memory about the precise details of the shooting, she underwent hypnosis by a neuropsychologist. After hypnosis she remembered that her husband was shot when he grabbed her arm and that the gun discharged without her pulling the trigger. The defendant's post–hypnotic recollections were corroborated by an expert's inspection which revealed that the gun was defective and could discharge without the trigger's being pulled. *Rock,* 107 S. Ct. at 2707.

At trial, the court permitted the expert to testify about the defective gun, but limited the defendant's own testimony to a reiteration of her sketchy prehypnosis recollection. The Arkansas Supreme Court affirmed, holding that hypnotically refreshed testimony is inadmissible per se. *Rock,* 107 S. Ct. at 2707–08. Reversing, the United States Supreme Court held that Arkansas' per se rule violated the defendant's constitutional right to testify. *Rock,* 107 S. Ct. at 2714–15. The Court acknowledged that hypnosis as a memory–refreshing technique is not entirely reliable. *Rock,* 107 S. Ct. at 2714. However, in balancing the State's legitimate interest in barring unreliable evidence against the defendant's right to testify on his own behalf, the Court found that:

> [w]holesale inadmissibility of a defendant's testimony is an arbitrary restriction on the right to testify in the absence of clear evidence by the State repudiating the validity of all posthypnosis recollections.

*Rock,* 107 S. Ct. at 2714.

■ *Rock* is "bottomed on [the defendant's] constitutional right to testify in her own defense." *Rock,* 107 S. Ct. at 2708. The right to testify is essential to the Fifth Amendment right of due process and the Sixth Amendment right to call witnesses on one's own behalf. *Rock,* 107 S. Ct. at 2709. However, the accused's right to present relevant testimony is not without limitation, but must bow to accommodate the State's legitimate interest in promoting "fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi,* 410 U.S. 284, 302, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973); *Rock,* 107 S. Ct. at 2711. In *Rock,* the Court distinguished between evidentiary rules which exclude material portions of the *defendant's* own testimony and rules which exclude unreliable testimony of *witnesses. Rock,* 107 S. Ct. at 2712.

Washington's rule against admitting unstipulated polygraph evidence does not affect the defendant's right to testify on his own behalf. The rule did not prevent Ahlfinger from taking the stand to deny his guilt and fully present his version of the facts. Moreover, the polygraph evidence would have only bolstered Ahlfinger's testimony on the ultimate issue of his alleged innocence. Where testimony purports to render an opinion on a defendant's guilt or innocence, the underlying basis for that opinion must be sound. *See State v. Black,* 109 Wn.2d 336, 346–57, 745 P.2d 12 (1987) (in a rape prosecution where the defense is consent, testimony regarding "rape trauma syndrome" was held inadmissible because it is not "scientifically reliable" and therefore not probative on the issue of whether the victim was raped). Despite years of experimentation with the polygraph, the scientific community has yet to accept it as a reliable and trustworthy indicator of deception.

We hold that until the polygraph achieves general *acceptance by the* scientific community, the defendant's right to represent relevant polygraph evidence must bow to accommodate the State's legitimate interest in excluding inherently unreliable testimony. This is especially true where the evidence is as seductive as the polygraph; a

machine that purports to test truthfulness. Accordingly, *Rock* does not compel reversal of Washington's rule excluding polygraph evidence absent a stipulation.

## II
### RAPE CRISIS CENTER RECORDS

Ahlfinger contends that the trial court erred by refusing to make Orlando Manois' written notes available to defense counsel because Manois used those notes to refresh his memory prior to trial. He argues that ER 612 and his Sixth Amendment right to confront witnesses entitled him to examine the notes.

RCW 70.125.065 provides for the confidentiality of rape crisis center records and prohibits their discovery by defense counsel unless, after the court reviews the notes in camera, it determines that they are relevant and their probative value outweighs the victim's privacy interest in keeping the notes confidential. The scope of discovery of privileged records is within the sound discretion of the trial court. *State v. Espinosa,* 47 Wn. App. 85, 88, 733 P.2d 1010 (1987) (citing *State v. Mines,* 35 Wn. App. 932, 938, 671 P.2d 273 (1983), *review denied,* 101 Wn.2d 1010 (1984) and *Seattle v. Apodaca,* 18 Wn. App. 802, 803, 572 P.2d 732 (1977)). Where the report contains nothing inconsistent with any evidence to which the defendant was given access or with the victim's trial testimony, disclosure is not required. *Espinosa,* 47 Wn. App. at 88.

ER 612, on the other hand, permits an adverse party to inspect a writing used to refresh a witness' memory either before or while testifying, to cross–examine the witness, and introduce in evidence those portions of the writing that relate to the testimony of the witness. The right of the adverse party to examine this writing is contingent upon the trial court's discretionary determination that review of the writing is necessary in the interests of justice. ER 612. Contrary to Ahlfinger's assertion, ER 612 does not mandate disclosure of any writing used to refresh a witness' memory.

■ Here, the trial court reviewed Manois' interview notes and determined that defense counsel would not "be in a different position if [he] read [the notes]." The court balanced the purpose of RCW 70.125.065 to protect the confidentiality of a rape report against the probative value of the notes in this case and determined that the notes need not be disclosed. Having examined the notes, we agree. They contain very little information, none of which was inconsistent with Manois' testimony or the victim's testimony. The trial court did not abuse its discretion under ER 612 in determining that the victim's privacy interests in the confidentiality of the notes outweighed their minimal probative value and that disclosure was not necessary.

■ Ahlfinger contends that even if the trial court did not violate ER 612 by refusing to disclose the notes, its decision nevertheless violated his Sixth Amendment right to confront witnesses. Ahlfinger's contention is without merit. The Sixth Amendment right to cross–examine witnesses is not absolute but must be applied to advance the accuracy of the truth–determining process in criminal trials. *State v. Boast,* 87 Wn.2d 447, 453, 553 P.2d 1322 (1976). Whether a defendant's confrontation right has been denied is determined on a case–by–case basis after examination of all the circumstances and evidence. *Boast,* 87 Wn.2d at 453. Where the defendant's Sixth Amendment right is limited, the State must show a compelling interest in limiting that right. *State v. Hudlow,* 99 Wn.2d 1, 16, 659 P.2d 514 (1983).

The State has a legitimate interest in protecting the privacy rights of rape victims. Without such protection, victims would be even less likely to report rape. As we have discussed, *supra,* Ahlfinger's right to cross examination was not substantially affected. Thus, the State's interest in the victim's right of privacy is compelling here when compared to the minimal limitation placed on Ahlfinger's right of confrontation. *Cf. Hudlow,* 99 Wn.2d at 16 (the State's interest in protecting the privacy rights of rape victims is

compelling where the evidence of the victim's past sexual behavior is minimally relevant). Thus, the trial court's decision to keep the notes confidential did not violate Ahlfinger's Sixth Amendment rights.[4]

Affirmed.

GROSSE, J., and RINGOLD, J. Pro Tem., concur.

After modification, further reconsideration denied March 23, 1988.

Review denied by Supreme Court July 5, 1988.

---

[4]Ahlfinger's reliance on *Delaware v. Van Arsdall,* 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986) and *State v. Portnoy,* 43 Wn. App. 455, 718 P.2d 805 (1986) is misplaced. Those cases involved a trial court's decision to prohibit the defense from cross-examining state witnesses as to their bias stemming from the prosecutor's offers in exchange for testimony. Clearly, the State's interest in keeping information about plea bargains or offers of leniency from the jury is outweighed by the defendant's right to confront the witnesses and alert the jury to their potential bias.