IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 69452-9-I
Respondent, )
) DIVISION ONE
v. )
)
RAYMOND ROSARRO ABITIA, ) UNPUBLISHED OPINION
aka RAYMOND RUSSELL ABITIA; )
PACO, ) FILED: May 27, 2014
)
Appellant. )
_____ )

BECKER, J. — In this trial of a child rape charge, an expert witness for the State testified that people who molest children often do not tell the truth and when subjected to polygraph testing, they often admit to committing more sexual abuse than the child victim reported. This was improper profile testimony that categorized the defendant as a liar. We conclude the error was properly preserved and was not harmless.

The alleged victim was Abitia's daughter, KM. KM disclosed the abuse after an incident in Skagit County that occurred shortly after she turned 14 years old. Following this event, KM hesitantly disclosed to family members that Abitia's sexual contact with her had been going on for some time and that it began when she was 13 years old and they were living in Whatcom County. Eventually police

were informed, but it was not until their third contact with KM that she was willing to talk to them about it. She testified at trial that she was afraid her family would disown her.

Abitia went to trial on one count of rape of a child in the second degree[1] and one count of distribution of a controlled substance to a minor.

At trial, the State began its case with two witnesses who testified about the Skagit County incident. KM's cousin, who had been hosting a party, testified that she went upstairs and noticed a bedroom door was closed. She opened it to find Abitia standing at the door, breathing hard, sweating, and shaking. KM was on the edge of a mattress with one leg completely out of her pants. The cousin threatened to call the police. She asked KM how long it has been going on. KM told her cousin "for a while," but she said she would deny it if police were called. The second witness was KM's older sister, who testified that KM told her that Abitia would get her high and then have sex with her and it had begun when they lived in Whatcom County. KM's sister said that KM's disclosure tore the family apart.

The State's third witness was Joan Gaasland-Smith, the sexual assault case specialist for the Whatcom County prosecutor's office. Gaasland-Smith was qualified as an expert to discuss child sex abuse in general. Gaasland-Smith testified that it is not unusual for children to delay disclosure. She said while there is no single reason that applies in every case, there are many reasons a child may not immediately disclose. A perpetrator may have offered

---

[1] Rape of a child in the second degree, a class A felony, requires that the crime occur before the victim is 14 years old. RCW 9A.44.076.

the child rewards, money, or special attention in exchange for silence. The child may value the relationship with the perpetrator, fear being seen as abnormal, or think that the sexual contact feels good.

Up to this point, there was nothing particularly objectionable about Gaasland-Smith's testimony. KM did not disclose abuse until the Skagit County incident and even then she resisted disclosing it to the police. Abitia's defense strategy was to challenge KM's credibility. It is generally permissible for a jury to hear expert testimony explaining why delayed disclosure does not necessarily mean the victim lacks credibility. State v. Petrich, 101 Wn.2d 566, 575-76, 683 P.2d 173 (1984); State v. Holland, 77 Wn. App. 420, 427, 891 P.2d 49, review denied, 127 Wn.2d 1008 (1995).

But in response to the prosecutor's next question, Gaasland-Smith began to veer toward generalities about perpetrators. She said, "Kids can be told by perpetrators that, um, that other adults believe adults, they won't necessarily believe a child." Abitia objected to "this whole line of questioning as to what do other sexual predators do":

> Your Honor, we would object to this. There is nothing here to indicate that she is discussing anything that occurred in this case. She is talking about things in general that by implication apply to this case, but don't, in fact, apply to this case. So we object to this whole line of questioning as to what do other sexual predators do or what are their habits or whatever. There is nothing to indicate that any of that is occurring in this case.

The prosecutor responded that Gaasland-Smith was testifying as an expert "and I believe what we are hearing would be helpful to the jury." Defense counsel said, "What they are hearing is also highly prejudicial. It implies that all

3

sex offenders act in a certain way and that she can recognize them and telling them what they can do to recognize this as well."

The court overruled the objection, stating that "what kids can be told by perpetrators . . . is appropriate testimony for an expert witness." The court warned the prosecutor to "be very cautious so that generalization does not directly or indirectly suggest to the jury that that is what has happened" in this case.

Gaasland-Smith went on to discuss reasons why children may be afraid to disclose. She testified that most of the time, children do not disclose everything all at once. When asked about the basis of her knowledge, she answered that sexual deviancy evaluations show it is common to discover that "more happened than the child ever told." In the course of this answer, Gaasland-Smith testified that a sexual deviancy evaluation includes a lie detector test because "oftentimes people who do this kind of thing don't tell the truth":

> Q. . . . And when kids do disclose, do they disclose everything all at once?
>
> A. Most of the time, no.
>
> Q. And how do you know this?
>
> A. I know this from a couple of, um, sources. The first one is that, um, we read sexual deviancy evaluations.
>
> Q. What is a sexual deviancy evaluation?
>
> A. When a sexual offender desires to get treatment, then he - - I am going to say he - - we know that women also abuse children, but that he will go to a certified sex offender treater, that's a person who is specially qualified in the State of Washington to treat people who have this problem. And, um, part of the sexual deviancy evaluation is for the perpetrator to

4

say, um, all of their sexual partners to disclose all of their victims, to talk about all of their sexual behaviors and then *there is a lie detector test given because, um, oftentimes people who do this kind of thing don't tell the truth.* So that's a way to kind of find out if they are telling the truth or not. And so if we have this child - - we have the child's disclosure of what happened and then we have a sexual deviancy evaluation. *It's most common to find out that a lot more happened than the child ever told.*

(Emphasis added.)

In cross-examination, Abitia established that in his case there was no sexual deviancy evaluation. He renewed his objection. Again, it was overruled:

[DEFENSE COUNSEL]: Your Honor, I would renew my objection to the whole line of testimony of this expert. I'm not sure that she has told the jury anything that's relevant to this case that, that would be helpful. And I think it's highly prejudicial, implying that a lot of things occurred that --

THE COURT: I have already ruled on your objection . . . . We don't need a speaking objection. So the ruling stands.

The jury convicted Abitia as charged.

On appeal, Abitia argues that Gaasland-Smith's general testimony as to the credibility of sex offenders was impermissible opinion testimony that invaded the province of the jury. According to Abitia, the witness in effect told the jury that "sexual perpetrators like Mr. Abitia are 'oftentimes' liars whose stories need to be vetted through a polygraph examination" and "in all probability, Mr. Abitia had raped [KM] 'a lot more' than she has revealed."[2]

The State contends that Abitia is making this argument for the first time on appeal and has not demonstrated manifest constitutional error. In the State's

---

[2] Appellant's Br. at 25-26.

view, Abitia's only objection below was that Gaasland-Smith's testimony was not proper expert testimony.

The propriety of an evidence ruling will be examined on appeal if the specific basis for the objection is apparent from the context. Citation to a particular rule of evidence is not necessarily required. State v. Braham, 67 Wn. App. 930, 934-35, 841 P.2d 785 (1992).

In Braham, the defendant was convicted of first degree child molestation. The State presented an expert witness, Lucy Berliner, who like Gaasland-Smith had no particular information about the victim or the case. The purpose of her testimony was to explain how child molesters use a grooming process to establish a relationship with an intended victim prior to the initiation of sexual abuse. Braham, 67 Wn. App. at 933. Berliner described a recent study that involved questionnaires to past victims of child abuse and to men who had been in treatment for sexual abuse of children. Braham, 67 Wn. App. at 934 n.3. Defense counsel objected on the ground of relevance:

> "[C]ertainly as to this grooming testimony, there is no indication here that that would be proper or that would be relevant. . . . And I think that in testifying as to what she believes to be the common grooming process, the jury could be seriously misled and certainly given false impressions as to what in fact the facts were, if any, in this particular case that would support the State's allegations. Therefore I would strenuously object to that type of testimony."

Braham, 67 Wn. App. at 932 (alteration in original). The trial court overruled the objection.

On appeal, Braham argued that Berliner's expert testimony on the grooming process was a type of profile testimony that carried an unfairly

prejudicial opinion that he was guilty. The State insisted that this was a different ground than had been argued below. This court concluded that the defense objection that "the jury could be seriously misled" was sufficient in context to invoke ER 403. "Washington's general prohibition on expert 'profile' testimony is premised precisely on this element of unfair prejudice and the ensuing false impression the jury might derive about the value of the expert's ostensible inference." Braham, 67 Wn. App. at 935.

Abitia's objection below was likewise sufficient to preserve his opportunity for appellate review. He objected to Gaasland-Smith's testimony on the basis that it was highly prejudicial to admit expert testimony about sex offenders generally—how they behave and what their characteristics are as a class. He said, "She is talking about things in general that by implication apply to this case, but don't, in fact, apply to this case." On appeal, Abitia argues that it was improper for Gaasland-Smith to give her expert opinion that oftentimes sex offenders—"people who do this kind of thing"—are untruthful. The objection below was sufficient to alert the trial judge that Gaasland-Smith was profiling sex offenders, which is the argument Abitia makes on appeal.

A trial court's decision to admit expert testimony is reviewed for abuse of discretion. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Perpetrator profile testimony is improper because it "clearly carries with it the implied opinion that the defendant is the sort of person who would engage in the alleged act, and therefore did it in *this* case too." Braham, 67 Wn. App. at 939 n.6. Gaasland-Smith's line of testimony about what perpetrators do should have

been cut off when the objection was first raised. Her opinion that sex offenders lie about their conduct implied that Abitia was lying when he denied having sexual contact with KM. No witness may testify as to an opinion on the veracity of the defendant, either directly or inferentially. Kirkman, 159 Wn.2d at 927. We conclude it was unfairly prejudicial testimony that invaded the province of the jury to weigh the credibility of Abitia relative to KM.

Gaasland-Smith's testimony that offenders can be trusted to tell the truth only when they are subject to lie detector tests was also unduly prejudicial. Ordinarily, polygraph evidence is inadmissible absent stipulation by both parties because the polygraph has not attained general scientific acceptability. State v. Justesen, 121 Wn. App. 83, 86, 86 P.3d 1259, review denied, 152 Wn.2d 1033 (2004); State v. Ahlfinger, 50 Wn. App. 466, 472-73, 749 P.2d 190, review denied, 110 Wn.2d 1035 (1988). Gaasland-Smith's improper reference to lie detectors bolstered her opinion that sexual offenders, as a class, are liars.

The State does not argue that Gaasland-Smith's testimony, if error, was harmless, and we conclude it was not. A government witness gave expert testimony implying that the defendant was categorically untruthful.

The State also does not separately argue that Abitia's conviction for distributing methamphetamine to KM should be affirmed. Because Gaasland-Smith's testimony undermined the fairness of the trial as a whole, we conclude Abitia is entitled to a new trial on both counts.

We also accept the State's concession that a sexual assault protection order entered with respect to KM's sister was unlawfully imposed. As the

charges related to the sister were dismissed before trial, the order must be vacated.

Reversed.

_Becker, J._

WE CONCUR:

_Spearman, C.J._     _Lau, J._