IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39880-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TYREL DENNIS FABER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

FEARING, J. — Tyrel Faber appeals his conviction for third degree child molestation on three evidentiary grounds. We agree with one of those grounds and reverse his conviction. The trial court failed to engage in the required four-part test under ER 404(b) when allowing introduction of evidence of earlier misconduct.

FACTS

This appeal surrounds the alleged molestation of L.F. by Tyrel Faber. L.F. was born in September 2004. When L.F. was two years old, her mother, Holly Faber (now Holly Freeman), began dating Tyrel Faber. Faber and Freeman married in 2011.

Tyrel Faber and L.F. maintained a good relationship when she was younger, with L.F. describing the relationship as "really close." 3 Report of Proceedings (RP) at 364. At around 13 or 14 years old, L.F. and Faber occasionally shopped for clothes for her. Faber made L.F. try the clothes on before he approved of the purchase. Over time, L.F. and Faber agreed Faber would buy L.F. clothes if she performed household chores.

Tyrel Faber began requesting foot rubs from L.F. in exchange for buying her clothes. In turn, Faber gave L.F. foot rubs, although he never rubbed his wife's, Holly Freeman's, feet and never requested that she massage his. The frequency of the foot rubs between L.F. and Faber increased over time and often happened at night when the two were alone.

On March 21, 2019, when L.F. was 14 years old, Tyrel Faber purchased sunglasses for L.F. after she promised him a foot rub. That night, L.F., in the residence's living room, gave Faber a foot rub that occurred later than normal. Holly Freeman had already retired to the marital bedroom. With the two seated on the living room couch, Faber flipped L.F. on her stomach. L.F. pretended to be asleep. Faber placed L.F.'s bare foot on his penis. She felt an erection. Faber pulled L.F.'s shorts up to the extent of exposing her buttocks. He squeezed and rubbed her buttocks.

According to L.F., Tyrel Faber, during this encounter, slid his hands up her legs and placed the hands underneath her underwear. The hands never touched L.F.'s vagina,

but L.F. estimated that the hands rested less than an inch from her vagina. Faber's hands stayed under the underwear for about ten minutes. L.F. prayed for the touching to end.

Holly Freeman decided to determine whether daughter L.F. had retired to bed. Freeman entered the living room, at which point Tyrel Faber massaged L.F.'s feet. Freeman noticed L.F.'s butt cheeks were "basically exposed." 3 RP at 475-76. Because L.F.'s eyes were closed, Freeman believed L.F. to be sleeping. Freeman noticed her husband moved one or both hands from L.F.'s side to the couch.

Holly Freeman awoke L.F. and instructed her to go downstairs. Freeman then confronted Tyrel Faber. He looked like a deer in the headlights.

On March 25, 2019, L.F. disclosed to her mother that Tyrel Faber had been molesting her. In addition to other incidents, L.F. reported an incident during a road trip to North Dakota when she was 10 years old, during which Faber rubbed her back under her shirt and moved his hand to her front. L.F. did not recall Faber having touched her breasts.

On March 25, Holly Freeman telephoned Tyrel Faber to confront him with L.F.'s allegations. Freeman directed Faber to move from their home. When confronted about L.F.'s disclosures on the phone, Faber remained silent before hanging up. When Freeman returned home later that day, she saw a packed duffle bag on her and Faber's bed and noticed his laptop was missing. Faber did not return home that night.

Tyrel Faber texted his mother, Denise Pooler, about leaving the community and not returning. He added his sorrow for disappointing her. Faber also, by text, gifted, to his friend, Chris Stairs, his carpentry tools located at the residence's shop. He withdrew $400 from an account. Faber drove to his sister's home in Oregon. He returned to Spokane three weeks later.

On March 26, 2019, Holly Freeman reported L.F.'s disclosures to Detective Anthony Lamanna at the Spokane Police Department. Detective Lamanna interviewed both Freeman and L.F. that day.

On April 4, 2019, Tyrel Faber's attorney, Jacqueline Porter, phoned Detective Anthony Lamanna and left a voicemail informing him that Faber would be available for a statement. On April 11, Detective Lamanna interviewed Faber with Porter present. Faber stated he knew of the investigation because Holly Freeman had contacted his family members about L.F.'s allegations. During the interview, Faber denied touching L.F. inappropriately. At the conclusion of the interview, Lamanna asked Faber if he would undergo a polygraph test, to which Faber and Porter agreed. An April 22 polygraph examination did not demonstrate that Faber lied when denying sexually assaulting L.F. Porter also delivered to law enforcement a report by Lawrence Kuciemba, a certified polygraphist not associated with the Spokane Police Department, of a separate polygraph test that showed that Faber did not sexually assault L.F. The

report specified that Faber's responses "appeared to be truthful." Clerk's Papers (CP) at

8.

PROCEDURE

The State of Washington charged Tyrel Faber with one count of child molestation

in the first degree and one count of child molestation in the third degree.

Tyrel Faber filed motions in limine seeking orders precluding various evidence.

We paraphrase the motions relevant to this appeal, and we list them by numbers used by

Faber:

> 1.  Any and all known prior bad acts or other acts Faber;
>
> 3. Faber, during a road trip to North Dakota when L. F. was 10
> years old, allegedly rubbed her back and front under her shirt;
>
> 8.  Faber withdrew $400 from an ATM in Sprague after learning of
> the allegations by L.F.;
>
> 9.  Faber texted his mother that: "I'm leaving. I won't be back.
> Sorry I disappointed you."
>
> 10.  Faber texted friend Chris Stairs to offer Stairs his tools after he
> was expelled from his home.

CP at 41-50.

In the same pretrial motion, Tyrel Faber also requested permission from the court

to inform the jury of the two polygraph examinations, one of which law enforcement

conducted. Faber argued that fairness dictated permission because the State would seek

to introduce evidence of his consciousness of guilt upon learning of the allegations.

5

Faber anticipated the State asserting (1) he stared in silence when confronted by his wife about the incident on March 21, 2019, (2) he remained silent on the telephone on March 25, 2019, when she confronted him, (3) he packed a bag to leave and withdrew some money from an ATM, (4) he disabled his cell phone, (5) he fled the state of Washington, (6) he sent a text message to his mother saying sorry and goodbye, (7) he sent his friend a text message offering his tools, and (8) he failed to report for work in the days following the accusations, and no one could locate him for days. Faber urged the superior court to conduct a *Frye* test to determine the reliability of polygraph examinations in the event the court held reluctance in granting his motion.

Tyrel Faber also requested leave to tell the jury that he left the state of Washington in order to temporarily reside with his sister in Oregon after being expelled from the marital home, he promptly returned to Washington once he learned of a Child Protective Services (CPS) investigation, he contacted CPS on his return and expressed a willingness to cooperate, and he voluntarily submitted to a recorded interview with Detective Lamanna. Faber further asked the trial court that, if the court denied introduction of the polygraph results, the court permit introduction of evidence that he willingly submitted to the two polygraph examinations.

In addition to objecting to most of Tyrel Faber's motions in limine, the State filed its own motions. The State asked for exclusion of evidence of the administration of any polygraph exams.

The superior court motions judge denied Tyrel Faber's motion to admit the results

of his polygraph testing. The court reserved for the trial judge the admissibility of

ancillary facts surrounding both polygraph examinations.

On the day before trial, the trial judge held a hearing on the parties' other motions

in limine. The court denied Tyrel Faber's motions in limine 3 and 8. Motions 3 and 8

sought to exclude testimony about the trip to North Dakota and withdrawal of bank funds

after the allegations. When ruling, the superior court did not make any finding that the

alleged conduct on either occasion likely occurred and did not examine the relevance of

the evidence. The court concluded that the evidence helped to establish motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

accident. The court recognized the significant prejudice of the evidence but ruled that the

probative value of the evidence outweighed the prejudice.

The trial judge again denied Tyrel Faber's motion to introduce the polygraph

examination results. The court, nonetheless, allowed testimony that Faber willingly

submitted to interrogations and testing asked of him by law enforcement.

At trial, L.F. testified to a road trip she, when in fifth grade, and Tyrel Faber took

from Spokane to North Dakota in 2015. According to L.F., she and Faber often traveled

alone. When asked about details of the trip, L.F. answered that she did not recall any.

L.F. later averred that, during this 2015 trip, she sat in the passenger seat. She rested her

head against the window and may have been near sleep. Faber rubbed the top of her back

under her shirt as he drove. Faber's hands moved from the top of her back, to the middle of her back, to her sides, and then to her chest. The hands "brushed" over her chest. 3 RP at 374. The brushing lasted momentarily. The touching left L.F. uncomfortable and confused. Because of her age, L.F. wondered if the touching was an accident or normal.

When delivering the jury instructions, the trial court read a limiting instruction regarding the evidence of the North Dakota road trip:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of disputed events involving alleged touching between Tyrel D. Faber and L.F. that occurred between Spokane and North Dakota and may be considered by you only for the purpose of proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

3 RP at 827-28.

The jury found Tyrel Faber not guilty of child molestation in the first degree and guilty of child molestation in the third degree. The trial court entered an order reflecting Faber's acquittal for first degree child molestation. The trial court sentenced Tyrel Faber to 9 months in confinement for his third-degree child molestation conviction.

## LAW AND ANALYSIS

Tyrel Faber's appeal focuses on rulings that permitted the State to introduce evidence and denied him the opportunity to do the same. Faber assigns error to the superior court's denial of his motion to exclude evidence of an alleged earlier bad act and

evidence purportedly showing consciousness of guilt. Faber asserts that the superior court mistakenly precluded evidence of his polygraph results. Faber seeks a new trial.

We grant Tyrel Faber a new trial based on the failure of the trial court to engage in a necessary ER 404(b) analysis before introducing evidence of alleged molestation during a road trip to North Dakota. Because of this ruling, we need not address Faber's two other assignments of error. We do so, however, because we expect the trial court to face the same questions on remand.

North Dakota Trip

The State presented testimony from L.F. that, during a road trip to North Dakota, Tyrel Faber rubbed her back, side, and chest. We refer to this purported happening as the North Dakota incident. On appeal, as he did before the superior court, Faber insists that this testimony constituted inadmissible earlier misconduct evidence that bore relevance to his prosecution only for the impermissible purpose of showing a propensity to commit crimes. In so arguing, Faber emphasizes that the court failed to conduct the analysis required under ER 404(b) and 403. Faber asserts that any such analysis would have demonstrated that the challenged evidence did nothing to prove motive, intent, identity, or opportunity. Faber also insists that this error by the court cannot be adjudged as harmless.

The State responds that the evidence of prior acts tended to show intent to touch L.F. for sexual gratification, an element of the charged sex crime. Child molestation is a

specific intent crime with the State needing to prove that the offensive touching was for sexual gratification. RCW 9A.44.010(13); RCW 9A.44.083(1); RCW 9A.44.089(1); *State v. Saiz*, 63 Wn. App. 1, 4, 816 P.2d 92 (1991). Thus, according to the State, ER 404(b) allowed introduction of evidence of other intimate touching. The State also argues that a court's failure to conduct the required ER 404(b) analysis does not mandate reversal if it was harmless error particularly because of the detailed written and oral rulings. This last argument by the State may conflate two discrete questions faced by this court: (1) whether the record suffices for us to conclude that the superior court reviewed all elements of a four-part test applicable when introducing ER 404(b) evidence, and, (2) assuming this court concludes the trial court failed to adequately address the four-part test, was the failure harmless error because of the strength of other evidence.

*Issue 1: Whether the trial court adequately articulated its application of the elements needed to introduce prior bad acts under ER 404(b)?*

*Answer 1: No.*

We conclude that the superior court failed to sufficiently review and apply the four-part ER 404(b) test. We further conclude that the error was not harmless. Because of our ruling, we do not examine whether the evidence tended to show intent to molest.

This court reviews a trial court's admission of ER 404(b) evidence for abuse of discretion. *State v. Arredondo*, 190 Wn. App. 512, 529, 360 P.3d 920 (2015), *aff'd*, 188 Wn.2d 244, 394 P.3d 348 (2017); *State v. Freeburg*, 105 Wn. App. 492, 497, 20 P.3d 984

10

(2001). The trial court abuses its discretion if its decision fails to follow the legal

standard. *State v. Cohen*, 125 Wn. App. 220, 223, 104 P.3d 70 (2005).

ER 404 reads, in part:

> (a) Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
> (1) *Character of Accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
> . . . .
> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Boldface omitted) (emphasis in original).

ER 404(b) recognizes that the State often uses evidence of prior acts to show the

defendant suffers from a particular character defect. The very purpose of ER 404 is to

exclude such character evidence. *In re Detention of Meistrell*, 47 Wn. App. 100, 109,

733 P.2d 1004 (1987). Both ER 404(a) and (b) bar evidence of a person's character or a

trait of character for the purpose of proving action in conformity therewith on a particular

occasion. In no case, regardless of its relevance or probativeness, may the evidence be

admitted to prove the character of the accused in order to show that he acted in

conformity therewith. *State v. Gresham*, 173 Wn.2d 405, 420-21, 269 P.3d 207 (2012).

The trial court presumes that any evidence of prior bad acts is inadmissible. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). In doubtful cases, the court should exclude the evidence. *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

Evidence of one's character or prior acts may be admissible for some purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. ER 404(b). The State only identifies intent as the exception germane to Tyrel Faber's conduct on the long car trip.

If the State seeks to introduce evidence for an alternate purpose listed in ER 404(b), the trial court must perform an analysis under the evidence rule. *State v. Pirtle*, 127 Wn.2d 628, 648-49, 904 P.2d 245 (1995). Under a four-part analysis, the court must (1) find by a preponderance of the evidence that the prior misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009); *State v. DeVincentis*, 150 Wn.2d 11, 17 (2003). Finding generalized relevance does not meaningfully apply the test and underscores the absence of any other permissible purpose. *State v. Bartch*, 28 Wn. App. 2d 564, 574, 537 P.3d 1091 (2023), *review denied,* 2 Wn.2d 1026 (2024). The State must demonstrate how the prior acts connect to its spotted purpose to prove an element of the crime. *State v. Saltarelli*, 98

Wn.2d 358, 364, 655 P.2d 697 (1982); *State v. Wade*, 98 Wn. App. 328, 334-35, 989 P.2d 576 (1999).

The trial court must conduct the ER 404(b) analysis on the record. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007); *State v. Asaeli*, 150 Wn. App. 543, 576 n.34, 208 P.3d 1136 (2009). On-the-record analysis facilitates appellate review and ensures that the judge considers introduction of the evidence. *State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984). A judge who carefully records his reasons for admitting ER 404(b) evidence is less likely to err, because the process of stating specific reasons for a decision insures a thoughtful consideration of the issue. *State v. Jackson*, 102 Wn.2d 689, 694 (1984). But if the record shows that the trial court adopted one of the parties' express arguments as to the purpose of the evidence and embraced that party's weighing of probative and prejudicial value, the trial court's failure to conduct its full analysis on the record is not reversible error. *State v. Pirtle*, 127 Wn.2d 628, 650-51 (1995); *State v. Asaeli*, 150 Wn. App. 543, 576 n.34 (2009). Because of its criticality to our decision, we refer hereafter to this latter principle as the *Pirtle* rule.

The *Pirtle* rule mentions only two of the four elements of the ER 404(b) test: the proponent's isolation of the purpose of the evidence, and the weighing of the probative and prejudicial value of the evidence. The *Pirtle* rule does not reference elements one and three—the court's need to assess the probability of the truth of the bad act and the bad act's logical relationship to its identified purpose. We conclude, nonetheless, that the

*Pirtle* rule extends to the extent that, unless the record shows some adoption by the trial court of the State's insistence that the bad act likely occurred and relates to the purpose behind the evidence, the trial court committed error. The Supreme Court has never suggested that elements one and three hold less importance or deserve less favor than elements two and four. One might even argue that, because the *Pirtle* rule does not reference elements one and three of the test, the trial court's failure to assess on the record the fulfillment of both elements equates to error even if the court impliedly adopts the proponent's argument with regard to both elements.

This reviewing court encounters a handicap in determining the likely truthfulness of purported misconduct because we do not observe the witness testify and because we lack immersion in the trial that the superior court experiences. For similar reasons, the trial court enjoys a better perspective as to the relevance of the evidence in the context of the purpose under which the State seeks introduction of the evidence. Thus, this appeals court needs the trial court to place on the record whether it finds the misconduct probably occurred and whether the misconduct relates to the ER 404(b) exception. In addition to needing to know the ruling reached and the reasoning adopted by the court, we also should know whether the superior court considered the elements.

In this appeal, the State tersely argues that the trial court implicitly adopted the State's arguments, including implicitly finding the conduct occurred. The State does not pinpoint in the record any time when the superior court addressed the veracity of the

North Dakota incident. Nor does the State explain how it deduces that the trial court implicitly found the conduct occurred. The trial court mentioned and analyzed the requirement that the evidence must tend to show intent, opportunity, or motive. The court also weighed the probative and prejudicial nature of the evidence. Perhaps we should deduce that the trial court must have resolved the reliability of the allegation and its relevance to intent. Otherwise, it would not have evaluated the purpose for the evidence along with its prejudicial nature. But because of Tyrel Faber's denial of the incident, because of the harmful effect of the evidence of other misconduct, and because the court should presume the evidence is inadmissible, we choose not to draw these assumptions.

The State knew before trial that it intended to introduce evidence of the North Dakota incident and should have readily known the requirements of introducing evidence under ER 404(b). The State could have and should have ensured that the trial court analyzed all four factors on the record.

We find Washington cases that hold that the trial court erred when failing to weigh the probative and prejudicial nature of the ER 404(b) evidence on the record. *State v. Jackson*, 102 Wn.2d 689 (1984). We also find the reverse outcome, when the reviewing court excused the failure to weigh prejudice with importance. *State v. Pirtle*, 127 Wn.2d 628 (1995). We find no Washington cases wherein the trial court failed to declare on the record whether the alleged misconduct likely transpired.

15

In *State v. Uriarte*, 194 Ariz. 275, 981 P.2d 575 (Ariz. Ct. App. 1998), the prosecution charged Jesse Uriarte with sexual conduct with a minor. The State sought to introduce evidence, under ER 404(b), of Uriarte's other alleged sexual misconduct with a child. Before admitting the evidence, the trial court declared that the state need only show by a preponderance of the evidence that those events occurred. Under Arizona law, however, the State needed to prove by clear, cogent, and convincing evidence that the defendant committed the earlier bad acts for testimony of the acts to be admitted. Because the trial court failed to articulate on the record that clear, cogent, and convincing evidence confirmed the misconduct, the reviewing court reversed Uriarte's conviction. Tyrel Faber's trial court failed to place on the record a finding that the North Dakota incident likely occurred.

*Issue 2: Whether the trial court's failure to apply the four-part test under ER 404(b) constitutes harmless error?*

*Answer 2: No.*

Evidentiary errors under ER 404 are not of constitutional magnitude. *State v. Powell*, 166 Wn.2d 73, 206 P.3d 321 (2009). ER 404(b) is not an error of constitutional magnitude. Consequently, the nonconstitutional standard for harmless error applies. *State v. Tharp*, 96 Wn.2d 591, 599 (1981). Reversal is required if the appellant demonstrates a reasonable probability that the error materially affected the outcome of the trial. *State v. Hale*, 28 Wn. App. 2d 619, 639, 537 P.3d 707 (2023). The improper

admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole. *Nghiem v. State*, 73 Wn. App. 405, 413, 869 P.2d 1086 (1994). The analysis does not turn on whether there is sufficient evidence to convict without the inadmissible evidence. *State v. Gresham*, 173 Wn.2d 405, 433, 269 3d 207 (2012).

In sex cases the prejudice potential of prior acts is at its highest. *State v. Gresham*, 173 Wn.2d 405, 433 (2012). In three sex crime prosecutions, Washington courts found earlier alleged sexual misconduct evidence prejudicial and reversed convictions. *State v. Gresham*, 173 Wn.2d 405 (2012); *State v. Bartch*, 28 Wn. App. 2d 564 (2023), *review denied,* 544 P.3d 29 (2024); *State v. Gower*, 179 Wn.2d 851, 857, 321 P.3d 1178 (2014).

When arguing harmless error, the State emphasizes that the jury found Tyrel Faber guilty of third-degree child molestation while simultaneously acquitting him of the charge of first-degree child molestation, which allegedly occurred when L.F. was younger. According to the State, the circumstantial evidence provided by the testimony about the North Dakota incident applied equally to both verdicts. If the evidence was incurably prejudicial, then the jury would not have found him guilty of only the lesser charge. According to the State, the jury probably placed great weight on the corroborative testimony from L.F.'s mother, who witnessed the crime on March 21, 2019, when she unexpectedly walked in on Faber intimately touching L.F. The superior court also presented the jury a limiting instruction.

The State raises good points, but other features of the prosecution outweigh the salient thrusts. Tyrel Faber denied both charges. We do not know why the jury believed his testimony as to one charge, but not another charge. L.F. initially testified that she did not recall any occurrences during the North Dakota trip. Later she characterized any brushing of her chest as accidental. Also, the mother did not directly observe any touching of private areas on March 21, 2019.

The State's own appeal brief overawes its assertion of harmless error. The State writes:

> The evidence [of the North Dakota incident] was highly probative on that point because the accusation was that Mr. Faber inappropriately touched L.F. under the guise of giving "foot rubs"; with no confession, only circumstantial evidence tended to show that Mr. Faber was touching L.F. for his sexual gratification.

Br. of Resp't at 35. Thus, the State deemed testimony of the North Dakota incident important, if not essential, to a conviction. The State conceded that evidence of the North Dakota incident was of major import because of the lack of otherwise overwhelming evidence as a whole. The superior court also noted the significant prejudice to Tyrel Faber caused by the testimony.

## Consciousness of Guilt

Tyrel Faber next challenges the trial court's denial of his motion to suppress consciousness of guilt evidence presented by the State. Although we need not address this challenge because we reverse on other grounds, this court often addresses

18

unnecessary issues because of the potential for repetition on remand for another trial. *State v. Gregory*, 158 Wn.2d 759, 800-01, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R., Jr.,* 181 Wn.2d 757, 336 P.3d 1134 (2014); *State v. Williams*, 81 Wn. App. 738, 744, 916 P.2d 445 (1996).

*Issue 3: Did the trial court err on relevance grounds when permitting the State to introduce evidence that Tyrel Faber left Spokane and drove to Oregon after being confronted by his wife Holly?*

*Answer 3: No.*

Tyrel Faber highlights principles of law about the potential of the introduction of inadmissible evidence violating the accused's right to due process of law. Nevertheless, he does not develop an argument based on constitutional principles. When an appellant fails to present developed argument for our consideration on appeal, we do not address the challenge. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). Therefore, we limit our review to nonconstitutional evidentiary error.

In his assignment of error, Tyrel Faber lists testimony about four events as inadmissible: his driving to Oregon to temporarily reside with his sister after being expelled by his wife from the Spokane residence, his withdrawal of money from an ATM machine, his apologetic text to his mother, and his messaged offer to a friend to take his tools. In his brief's argument, however, Faber focuses solely on his travel to Oregon.

Thus, we only address the admissibility of Faber's journey to our southern neighbor, characterized by the State as "flight resulting from consciousness of guilt." Nevertheless, we review the trip to Oregon in the context of the other three acts.

The admission of flight evidence falls under ER 404(b) because the evidence covers another act. Under ER 404(b), we review a trial court's decision to admit evidence, including evidence of flight, for an abuse of discretion. *State v. Freeburg*, 105 Wn. App. 492, 497, 20 P.3d 984 (2001).

The English common law sanctioned evidence of flight from which to infer a defendant's consciousness of guilt. *State v. Slater*, 197 Wn.2d 660, 667 (2021); *State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965). Still, courts as lofty as the United States Supreme Court have warned against the use of such evidence because the innocent often conceal themselves through fear or other emotion, not because of guilt. *Hickory v. United States*, 160 U.S. 408, 420, 16 S. Ct. 327, 40 L. Ed. 474 (1896). Subsequent conduct often carries only marginally probative value on the ultimate issue of guilt or innocence. *State v. Freeburg*, 105 Wn. App. 492, 498 (2001).

Under Washington law, the State may introduce evidence of flight but cannot argue that flight is conclusive. *State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965). The law recognizes that the manner and mode of flight may differ depending on the circumstances, and the court should consider these circumstances before sanctioning the

admission of the evidence. *State v. Bruton*, 66 Wn.2d 111, 112 (1965). We add that the

timing behind the travel should also be reviewed. In the end,

> the circumstance or inference of flight must be substantial and real. It may not be speculative, conjectural, or fanciful. In other words, the evidence or circumstances introduced and giving rise to the contention of flight must be substantial and sufficient to create a reasonable and substantive inference that the defendant's departure from the scene of difficulty was an instinctive or impulsive reaction to a consciousness of guilt or was a deliberate effort to evade arrest and prosecution. Pyramiding vague inference upon vague inference will not supplant the absence of basic facts or circumstances from which *the essential inference of an actual flight* must be drawn.

*State v. Slater*, 197 Wn.2d 660, 668, 486 P.3d 873, 878 (2021) (emphasis in original)

(internal citations omitted). In short, a trial court, when faced with proposed flight

evidence, must decide whether or not the alleged evidence of flight supports a

consciousness of guilt inference. *State v. Slater*, 197 Wn.2d 660, 670 (2021).

Washington courts have relied on a Fifth Circuit Court of Appeals' test to assess

the probative value of flight evidence. Under that test, this court analyzes:

> the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*State v. Slater*, 197 Wn.2d 660, 668-69 (2021) (quoting *State v. Freeburg*, 105 Wn. App.

492, 498 (2001)). Importantly, evidence of flight is admissible if it creates a reasonable

and substantive inference that the accused's departure from the scene was an instinctive

or impulsive reaction to a consciousness of guilt or was a deliberate effort to evade arrest and prosecution. *State v. Hebert*, 33 Wn. App. 512, 515, 656 P.2d 1106 (1982).

In *State v. Bruton*, a store detective stopped Christine Bruton and accused her of shoplifting. While the detective went to call the police, Bruton left the store. Police apprehended her later a few blocks away. On appeal, Bruton alleged that the trial court erred in instructing the jury it could consider, as a circumstance bearing on guilt or innocence, whether she fled from the scene. In reversing, the Supreme Court held that Bruton's leaving the scene of the crime was not evidence of flight because it was mere speculation at the time she was initially stopped whether she possessed the stolen items in question. The store detective had left Bruton and a friend alone with his assistant to walk to the back of the store to call police.

Based in part on *State v. Bruton*, we might rule that error occurred in admitting testimony of Tyrel Faber's travel to Oregon if no other surrounding circumstances pointed toward consciousness of guilt. Undisputed evidence shows that Faber left Washington for Oregon in part, if not primarily, because he lacked housing in Washington after his wife removed him from the family residence. When Faber learned that law enforcement sought to speak with him, Faber returned and underwent police questioning. We also question the relevance of the withdrawal of $400, but Faber does not separately analyze this conduct. We deem, however, that the text messages to his mother and his friend, combined with his leaving the state, creates a reasonable and

substantive inference of consciousness of guilt. He apologized to his mother. He bequeathed his tools to the friend. The conduct tends to show remorse for conduct and an intent not to return.

Tyrel Faber highlights that the trial court did not engage in the four-part inquiry found in *State v. Slater* and *State v. Freeburg*. But the courts employed this multi-pronged inquiry as an exercise in logic rather than a necessary legal test. No Washington decision demands that the trial court conduct the inquiry when presented with a request to admit evidence of flight to prove consciousness of guilt, let alone engage in the inquiry on the record.

Polygraph Results

*Issue 4: Did the trial court deny Tyrel Faber a constitutional right to present a defense when it precluded introduction of the polygraph results?*

*Answer 4: No.*

Tyrel Faber argues that the trial court violated his constitutional right to present a defense by excluding polygraph evidence. Faber wished to present the evidence to rebut the State's introduction of flight evidence and its consciousness of guilt theory. According to Faber, this error requires reversal and remand for a new trial. The State responds that the constitution does not afford anyone a right to present polygraph evidence in his defense. Instead, courts have consistently rejected polygraph evidence as unreliable science.

Both the United States and Washington constitutions grant a criminal defendant a right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Blair*, 3 Wn. App. 2d 343, 349, 415 P.3d 1232 (2018). This right, however, does not extend to irrelevant or inadmissible evidence. *State v. Blair*, 3 Wn. App. 2d 343, 349, 415 P.3d 1232 (2018).

Evidence of Tyrel Faber's cooperation in undergoing a polygraph examination tended to allay the State's evidence of consciousness of guilt. The evidence, however, did not hold importance because the request from the police happened to be a polygraph examination but because it showed cooperation. The import stemmed from the willingness to take the polygraph not from whether the polygraph confirmed or denied that Faber bespoke the truth. The evidence holds relevance, albeit minimal relevance, only to the limited extent of showing willingness to submit to tests. The trial court allowed Faber to introduce evidence of his willingness to undergo testing and questioning. The trial did not err when excluding the nature of the testing or the result of the polygraph examinations.

Under ordinary evidentiary rules, Washington courts have consistently rejected introduction of polygraph results because the scientific community does not accept polygraphing as a reliable method of determining the truth. *In re Detention of Hawkins*, 169 Wn.2d 796, 802, 238 P.3d 1175 (2010); *State v. Thomas*, 150 Wn.2d 821, 860, 83

24

P.3d 970 (2004); *State v. Renfro*, 96 Wn.2d 902, 905, 639 P.2d 737 (1982); *State v.*

*Finch*, 181 Wn. App. 387, 326 P.3d 148 (2014); *State v. Ahlfinger*, 50 Wn. App. 466,

472-73, 749 P.3d 190 (1988). Tyrel Faber contends the State opened the door by

introducing evidence of purported consciousness of guilt. We have already answered that

his willingness to submit to testing, not the nature of the testing, rebutted any opening of

the door.

CONCLUSION

We reverse Tyrel Faber's conviction for child molestation in the third degree and

remand for a new trial consistent with this decision.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.                Jourdan, J.P.T.[†]

---

[†] Robert E. Jourdan, an active judge of a court of general jurisdiction, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

25